ST. LOUIS, I. M. & SOUTH. RY. CO. vs LAWRENCE.

Opinion delivered September 23, 1903.

1.  *Railroads—Damage by Fire — Evidence.*

    In an action against a railroad company for damages to cotton caused by fire from one of defendant's engines, where the engine claimed to have caused the fire was not identified, it was competent to show that some. days afterward at the same place, an .engine of the company set fire to some cotton.

2.  *Railroads—Fires—Negligence—Burden of Proof—Instructions.*

    In an action for damages by fire caused by defendant's engine, it was correct to instruct the jury that if the evidence showed that the fire originated from sparks from a passing engine operated by defendant company, this was prima facie proof of negligence and the burden of proof shifted to the company to show that it was not guilty of negligence.

3.  *Damages—Instructions as to Particular Portions of Evidence.*

    It was not error for the court to refuse to instruct the jury, that the evidence was insufficient to establish a certain fact, where the proof of that fact was not necessary to support a verdict, and where a failure in such proof did not relieve the defendant from liability.

Appeal from the United States Court for the Northern District.

C. W. RAYMOND, Judge.

Action by J. A. Lawrence against the St. Louis, Iron Mountain & Southern Railway Company. Judgment for plaintiff. Defendant appeals. Affirmed.

This is an action brought by appellee (plaintiff below) against the defendant railway company to recover damages for the negligent burning of 10 bales of cotton, caused by sparks

ι n itted by one of its engines. The cotton had been placed by the plaintiff for shipment on defendant's platform at Ft. Gibson, Cherokee Nation. The complaint avers that the cotton was placed by him on the platform erected by the defendant for the purpose of receiving goods, including cotton, for shipment; that by direction of defendant's agent he had previously done the same thing; that on the 23d day of December, 1898, the cotton was burned through the negligence of defendant, in this: that the cotton was burned and destroyed by fire set out by one of the defendant's engines, being used and operated on its roadway, "which was not supplied with the best appliences for arresting sparks," and in operating the said engine negligently and carelessly. The answer denied every allegation of the complaint.

The proof, taken as a whole, showed that the cotton was placed for shipment on the platform of the defendant company, which platform was located about 20 feet from the center of the main track of the railway, and about 4 feet higher than the top of the rail; that the cotton was burned on the morning of the 23d of December, 1898. No bill of lading was executed, and the company had not accepted the cotton for shipment. Before daylight of the morning of the burning a freight train was seen passing, going west, and about 45 minutes thereafter another freight train was seen by the same witness, going east. Both passed the platform on which the cotton was located. The one going east was on an up grade, and, according to the statement of the witness, "was laboring very hard—working steam very hard...and throwing lots of fire." A few minutes after this train (the east-bound one) had passed the cotton was discovered to be on fire, and 10 bales were destroyed. A few days after these occurrences, according to the same witness, other cotton on the same platform was set fire to by one of defendant's engines. He saw the fire come from the engine fall upon the cotton, and set fire to it.

The defendant offered proof to show that from the time the first train was seen going west to the time the fire was discovered there were but two trains passed the platform, one going west, No. 269, pulled by engine No. 442, the other going east, train No. 276, engine 440; that after the arrival of the trains, one at Coffeyville, Kan., the other at Van Buren, Ark., they were examined, and found in a perfect condition; that the spark arresters were in good condition and of the latest improved kind. The engineer and conductor on each train testified that the engines were carefully and properly handled while passing Ft. Gibson. The engineer of the east-bound train testified that his engine on that occasion while passing Ft. Gibson and the platform did not emit any sparks, and that at that time, he had shut off the steam. The case was tried to a jury, and verdict for plaintiff. Motion for new trial was filed and overruled, and the cause duly appealed to this court.

*Dodge & Johnson* and *Oscar L. Miles*, for appellant. *William T. Hutchings*, for appellee.

CLAYTON, J.   In the assignment of errors there are five specifications of error as follows: "(1) The court erred in overruling motion of defendant to direct the jury to return a verdict for defendant, which motion was offered at the conclusion of the testimony offered by and on behalf of the plaintiff. (2) The court erred in admitting the testimony of witness Blake as to the fire started on cotton platform a few days after the fire complained of here occurred. (3) The court erred in overruling the motion of the defendant to direct the jury, to return a verdict for the defendant, which motion was interposed at the conclusion of all the testimony offered on behalf of both parties to this cause. (4) The court erred in giving of its own motion instruction No. 4. (5) The court erred in refusing to give instructions B and C, asked by defendant."

The first and third specifications present the same issue, and will be hereafter considered.

Passing to the second specification, the objection is that the plaintiff's witness Blake was permitted to testify, over the objection of defendant, that "just a few days after this fire that burned Mr. Lawrence's cotton a fire was set out in the cotton on the cotton platform by the engine pulling local. It was broad daylight, and I saw the fire as it came out of the engine and fell over on the cotton. Was right there when the fire started, and helped to put it out. "

The rule upon this question is clearly stated, and supported by many authorities therein cited, in the case of Lesser Cotton Co., vs Railway Co., 114 Fed. 135, 52 C. C. A. 99. It is there stated: "The true rule upon this subject is that, in an action against a railway company for setting a fire by means of defects in the condition or operation of an engine, it is competent, where the engine that might have set out the fire is unknown or unidentified, to introduce testimony that some of the defendant's engines set fires or threw igniting sparks at other times, within a few weeks, and at other places in the vicinity. * * * But where the engine which alone could have caused the fire is identified, and its spark arrester is produced, testimony that other engines of the defendant at other times and places set fires or threw igniting sparks is neither competent nor relevant to the issue, without proof that they were in the same condition and operated in the same way as was the engine charged when the fire occurred." And therefore the whole question on this assignment is, was the engine that caused the fire, if it were caused by one at all, clearly identified by the proof?

The cotton was placed on the platform the day before the fire, and therefore must have been there during the night of the 22d. It was discovered to be burning about 3 o'clock of the

morning of the 23d.   The train dispatcher testified that for three hours preceeding the time when the fire was discovered no trains except the two drawn by engines 440 and 442 had passed this place, which is as much as to say that three hours preceeding the discovery of the fire another train had passed that place, and how many others before that during the night is not known. But during an interval of three hours three trains had passed. As to the first no proof was made as to the condition of the engine, or as to its proper operation by the employes of the company.   And conceding that if it were clearly shown by the proof that either engine 440 or 442 passing within three-quarters of an hour of each other, set out the fire in controversy, that this would be a sufficient identification of the engine to exclude the proof of other fires having been set by other engines near the same time, we think it has not been clearly shown that either of these engines did it.   It is true that the testimony of plaintiff's witness Blake strongly tends to show that it was one or the other of these engines.   But the defendant, by its proof, showed a condition that it would have been almost, if not quite, impossible, if its witnesses are to be believed, that the fire was set out by either of those engines.

Mr. Wilson, the engineer on the west-bound train, engine No. 422, testified as follows: "I was employed by the St. Louis Iron Mountain & Southern Railway Company during the month of December, 1898, and on the morning of December, 23 1898, I was engineer on train 269, operating engine 442, pulling said train, and we arrived at Ft. Gibson, I. T., sometime after two o'clock that morning, en route from Van Buren, Ark., to Coffeyville, Kan., and as we came up to the station from the east I shut off steam and rolled on past the depot, and about as I was passing the depot I looked back and got a signal from the conductor to stop.   I rolled on down west, and stopped so that the caboose when the train stopped was about at the depot, or

a little west of it. * * *I remember we rolled past the cotton platform without working any steam before the train stopped. I handled my engine at Ft. Gibson that morning in a careful and skillful manner, and there was not at any time anything in the operation of the engine that· was improper, or otherwise than careful and skilfull. * * * Q. Mr. Wilson, did your engine start any fire on that trip? A. No, sir. Q. Do you always handle your engine in a careful and· skillful manner? A. Yes, sir; I believe I do. Q. Did you ever start any fires by the operation of an engine? A. No, sir."

Mr. Elliott, the engineer on the east-bound train, engine 440, testified: "On the morning of December 23, 1898, I was engineer of train first 276, in charge of Conductor L. H. Lamay, bound from Coffevyille, Kansas, to Van Buren, Arkansas. Said train was drawn by engine 440, and we arrived at Ft. Gibson, I. T., about 3:30 o'clock a. m. We met train 269 at Coretta, and came on over to Ft. Gibson, and took water at the tank, and came on up to the station at about eight miles per hour. I shut off steam between the west switch. and the cotton seed house, and did not use any steam until after we had passed the depot. At this time I ·noticed some cotton on the platform at Ft. Gibson, and I saw no evidence of fire thereabouts. My engine did not throw fire on that trip, and I had no reports about the engine needing repairs upon my arrival at Van· Buren."

Mr. Brewer, the defendant's machinist, boiler maker, and inspector of locomotives, testified: "These spark arresters are made of perforated steel sheets, the sheets being one-eighth of an inch in thickness, and the perforations being one-eighth of an inch wide by an inch and a quarter long. These sheets are placed in the front end of the engine immediately in front of the boiler and below the smokestack. The sheet is placed at an angle of about 45 degrees. The steam exhaust from the cylinders of the engine opens below the perforated steel sheet,

or the spark arrester, so that when the steam comes from the cylinder, being exhausted, it passes through the perforated steel sheet, or spark arrester, and then on out through the smoke stack. This steam, coming through the steel sheet and smoke stack with tremendous force, draws cinders and air from the fire box through the tubes or flues that extend through the boiler, and thus creates a draft."

It is the "tremendous force" of the draft caused by the steam exhaust coming through the steel sheet and smokestack that causes the sparks to be emitted in dangerous quantities, and if both engines had their "steam shut off," and were simply "rolling by" the cotton, they did not set fire to it; hence, if the fire was not set out by one of these engines, it must have occurred from some other cause, or from some other engine. No other cause was intimated by the proof. Three hours before the discovery of the fire another engine of the defendant not identified in any manner, had passed; and three days afterwards an engine of the company, not identified, in passing set fire to cotton located on the very same platform. The complaint does not attempt to name the particular engine, nor does the answer divulge it, which set out the fire. The plaintiff introduces proof tending to show that it was one of the two; the defendant shows positively that it was neither. Then what was it? Was it some other engine or some other cause? To determine the question as to whether it was some other engine, not identified, it was competent to show by the proof that three days afterwards another engine of the company had, at the same place, set fire to other cotton. And therefore the court did not err in admitting proof of that fact.

We will next consider the fourth and fifth specifications of error. The fourth instruction given by the court to which exception is taken, is as follows: "If the evidence in this case shows that the fire originated from sparks of a passing engine

operated by the defendant company, and its servants and agents, it is prima facie proof of negligence, and the burden of proof shifts on the railway company to show that it was not guilty of negligence."

In the case of Lesser Cotton Co. vs St. L., I. M. & S. R. Co., supra., the Circuit Court of Appeals for the Eighth Circuit say: "The burden of proof was upon the plaintiffs to establish the casual negligence of the defendant. When they proved, if they did, that the fire was caused by sparks emitted by the defendant's engine, that burden shifted to the defendant, and required it to establish, by a fair preponderance of evidence, that it had exercised reasonable care to provide the most effective mechanical contrivance in known practical use to prevent the burning of private property by the escape of fire from its engines;" and cite many authorities in support of their holding. The fourth instruction given by the court in this case is substantially in compliance with the rule laid down by that court.

The instructions requested by defendant, and refused by the court, to which exception is taken, are as follows:

"You are instructed that there is no evidence to sustain a finding that either engine was not equipped and in such condition as the law required."

"You are instructed that there is no negligence shown in the operation of either engine by defendant."

"You are instructed that there is no evidence to sustain a finding of any negligence in the equipment, maintenance, or operation of engine 442, west bound, and as to that engine your verdict must be for the defendant."

Courts are not required, at the solicitation of either party, to select particular parts of the evidence, and charge the jury

that they are insufficient to establish a certain fact, unless the proof of that fact was necessary to support the verdict, and in such case it would be the duty of the court to take the case from the jury by peremptory instruction. The insufficiency of proof as to the negligence of the defendant as to these two engines does not necessarily relieve it of responsibility, and therefore the court did not err in refusing to give the instructions.

As to the first and third specifications of error, that the court erred in overruling defendant's motion for peremptory instruction in its favor, it is only necessary to say that the motions were based on matters which have been heretofore decided adversely to the contention of appellant, and there was no error in refusing to take the case from the jury.

The judgment of the court below is therefore affirmed.

GILL, C. J., and TOWNSEND, J., concur.