CASES DETERMINED

IN THE

# UNITED STATES COURT OF APPEALS

FOR THE

## INDIAN TERRITORY

UNITED STATES ET AL VS LEWIS ET AL.

Opinion delivered September 23, 1903.

1. *Indian Lands—Towns and Town Lots—Leases.*

Under Sec. 16 of the Curtis Bill (Act, June 28, 1898) a Chickasaw Indian had a right to hold and rent such lands in said Nation as would be his reasonable share thereof, until allotment, and, after allotment to rent his allotted lands. Sec. 2118 Rev. Stats. U. S. prohibits any person from making a settlement on lands belonging to any Indian tribe, and surveying or designating boundaries of the same, and provides a penalty therefor. The Curtis Bill also provides for the laying off of towns in Indian Territory under direction of the Secretary of the Interior. *Held,* that Sec. 2118 does not relate to Indians; that the provisions in Curtis Bill regarding towns apply only to legal or political subdivisions, and that an Indian could subdivide his proportionate share of lands and lease same in small lots without violating any of the statutes cited.

GILL, C. J. dissenting.

Appeal from the United States Court for the Southern District.

HOSEA TOWNSEND, Judge.

(2)

Suit in equity by the United States and others against I. O. Lewis and others. Decree in favor of defendants. Complainants appeal. Affirmed.

This is an action in equity, brought by the United States, by its attorney, W. B. Johnson, Esq., to enjoin the defendants from mapping off and building a town on Indian lands mentioned in the complaint. The complaint also prays for a penalty of $1,000, each, for the violation of section 2118 of the Revised Statutes of the United States, and to oust the defendants from the possession of the said premises. The Chickasaw and Choctaw Nations were afterward made parties plaintiff. Taliaferro and Lewis are Chickasaw Indians. All the other defendants are white men. The defendant Taliaferro had been in possession of the premises for about 10 years, holding them as his prospective allotment. He had sold a one-half interest in them to Lewis, who, as has been stated, was also a Chickasaw Indian. A new railroad had recently been prospected through the lands, and a depot was to be erected upon them. These two defendants had procured the platting of a portion of their premises into lots and blocks, streets and alleys, and had sold one or two lots, executing therefor quitclaim deeds of conveyance, but, upon learning that it was not lawful to sell them, they ceased selling, and proceeded to lease the lots to all who might desire to rent. The other defendants to the suit are renters of certain lots now held by them. A demurrer was filed to the amended complaint, and was overruled, and an answer was filed. The case was then referred to a master to take proof, who reported the findings of fact to the court. Upon the hearing the court found there was no equity presented by the complaint, and dismissed the suit.

*W. B. Johnson,* for the United States.

*McKennon, Mansfield, McMurray & Cornish,* for the Choctaw and Chickasaw Nations.

*Furman, Herbert & Mather*, of counsel, for appellants.

*Cruce, Cruce & Cruce* and *Head, Dillard & Muse*, for appellees.

CLAYTON, J. The only question presented for our consideration in this case is, is it lawful for a Chickasaw Indian, in the Chickasaw Nation, to lay off a town and rent lots on his prospective allotment? The land upon which this town was being built was agricultural land, and was occupied by the defendant Taliaferro as his prospective allotment, and was not more than he and his family were entitled to hold. Section 16 of the Curtis bill (Act June 28, 1898, c. 517, 30 Stat. 501), provides: "That it shall be unlawful for any person, after the passage of this act, except as hereinafter provided, to claim, demand or receive, for his own use or for the use of any one else, any royalty on oil, coal, asphalt or other mineral, or on any timber or lumber, or any other kind of property, or any rents on any lands or property belonging to any one of said tribes or nations in said territory, or for any one to pay to any individual any such royalty or rents, or any consideration therefor whatever; and all royalties and rents hereafter payable to the tribe shall be paid under such rules and regulations as may be prescribed by the Secretary of the Interior, into the Treasury of the United States to the credit of the tribe to which they belong. Provided, that where any citizen shall be in possession of only such amount of agricultural or grazing lands as would be his just and reasonable share of the lands of his nation or tribe and that to which his wife and minor children are entitled, he may continue to use the same, or receive the rents thereon until allotment has been made to him. Provided, that nothing herein contained shall impair the rights of any member of a tribe to dispose of any timber contained on his, her or their allotment." Section 23 of the same act (30 Stat. 504) provides: "That all leases of agricultural or grazing land belonging to any tribe made after

the first day of January, 1898, by the tribe or any member thereof, shall be absolutely void, and all such grazing leases made prior to said date shall terminate on the first day of April, 1899, and all such agricultural leases shall terminate on January 1, 1900; but this shall not prevent individuals from leasing their allotments when made to them as provided for in this act, nor from occupying or renting their proportionate shares of tribal lands until allotments herein provided for are made." By these provisions, it seems to us clear that the defendant Taliaferro had the right to hold and rent these premises until allotment, and it cannot be contended but that he had the right to rent them in such subdivisions as would be to his best interest and advantage; and unless there be some other provision of the statute which forbids an Indian in possession of his prospective allotment from laying it, or any portion of it, off into town lots, and renting them, he unquestionably has the right to do so. It is contended, first, that the platting of towns in the Indian Territory is forbidden by section 2118 of the Revised Statutes of the United States. This section reads as follows: "Every person who makes a settlement on any lands belonging, secured, or granted by treaty with the United States, to any Indian tribe, or surveys or attempts to survey such lands, or to designate any of the boundaries by marking trees, or otherwise, is liable to a penalty of one thousand dollars. The President may, moreover, take such measures and employ such military force as may judge necessary to remove any such person from the lands." But this statute was not intended to prohibit the Indians from settling or surveying their lands, or using them in any manner to them deemed best. It was to prevent white men from settling and surveying them. If the Indian saw fit to build towns and rent their houses and lots to white men, they could do so as far as this statute is concerned. When Taliaferro divided his land up into lots and blocks, and rented them to white men, he did not violate the provisions of the Curtis bill, above set out, for

they permit him to rent; and he did not violate section 2118, because he was an Indian. And the other defendants did not violate these statutes, because the permission to rent granted by the Curtis bill necessarily implied the validity of the rental contract as to the tenant as well as to the landlord. But it is contended that, as the Curtis bill provides for the laying off of towns under the direction and control of the Secretary of the Interior and their incorporation by the United States Courts, individuals cannot do so; and this is true, in so far as the laying off and incorporation of legal and political subdivisions called "towns" by that act is concerned. But the town laid off by the defendants in this case is not such a town. It is only an aggregation of people, collected together on small tracts of land, leased to the occupants by a person having the legal right to rent. No political or corporate rights or powers are created. The position of the parties is the same as if the Indian's prospective allotment had been platted and divided into small farms, and leased to the tenants, or a blacksmith shop or storehouse had been erected at the cross-roads, and rented to them by the Indian occupant. It is but the beginning of the process by which all of the towns in the Indian Territory have been built. Except in certain cases, the Secretary of the Interior has no power to lay off a town in the Indian Territory unless it have 200 or more inhabitants. There is no provision of the statute which commands town building to cease in the Indian Territory; and, if so important a matter had been intended, surely Congress would have said so in plain language.

The judgment of the court below is affirmed.

RAYMOND, J., concurs.

GILL, C. J. (dissenting). I am compelled to differ with the majority of the court upon the question involved in this case.

The only question involved in this case, practically, is whether it is lawful for a citizen of the Chickasaw tribe of Indians to rent lands of which he may be in possession, and which he claims to hold as his prospective allotment, for other than agricultural and grazing purposes, pending allotment; that other purpose, in this instance, being the mapping, platting, and renting of said lands for townsite purposes. Appellants contend that under the law only the Secretary of the Interior has the right to survey, lay out, and plat any of the lands of the Chickasaw Nation for town-site purposes lying contiguous to railway stations, or stations to be hereafter established on said line of railroad, or for any other purpose. Appellees contend, and the court below so ruled, that a member of the Chickasaw tribe of Indians, in possession of his approximate share of the tribe's lands as his prospective allotment, had a right to rent the same for town purposes in lots, blocks, etc., as he might see fit. As will be seen from the foregoing statement of fact, the court below held that the complaint did not state a cause of action, and denied the injunction and restraining order prayed for.

Section 2118 of the Revised Statutes of the United States reads: "Every person who makes a settlement on any lands belonging, secured, or granted by treaty with the United States, to any Indian tribe, or surveys or attempts to survey such lands, or to designate any of the boundaries by marking trees, or otherwise, is liable to a penalty of one thousand dollars. The President may, moreover, take such measures and employ such military force as may judge necessary to remove any such person from the lands." Section 23 of the Curtis bill (Act June 28, 1898, c. 517, 30 Stat. 504), is as follows: "Sec. 23. That all leases of agricultural or grazing land belonging to any tribe made after the first day of January, eighteen hundred and ninety-eight, by the tribe or any member thereof shall be absolutely void, and all such grazing leases made prior to said date shall

terminate on the first day of April, eighteen hundred and ninety-nine, and all such agricultural leases shall terminate on January first, nineteen hundred; but this shall not prevent individuals from leasing their allotments when made to them as provided in this act, nor from occupying or renting their proportionate shares of the tribal lands until the allotments herein provided for are made." Section 16 of the Curtis bill (30 Stat. 501) provides: "That it shall be unlawful for any person, after the passage of this act, except as hereinafter provided, to claim, demand or receive for his own use, or for the use of any one else, any royalty on oil, coal, asphalt or other mineral, or on any timber or lumber, or any other kind of property whatsoever, or any rents on any lands or property belonging to any one of said tribes or nations in said territory, or for any one to pay any individual any such royalty or rents, or any consideration therefor whatsoever. *. * * Provided, that where any citizen shall be in possession of only such amount of agricultural or grazing lands as would be his just and reasonable share of the lands of his nation or tribe, and that to which his wife and minor children are entitled, he may continue to use the same or receive the rents thereon until allotment has been made to him." This action was brought, among other purposes, to recover a penalty, under said section 2118, of the defendants. Whatever application it might have to the other defendants, we do not think it reaches to the defendants Taliaferro and Lewis, both of whom are citizens of the Chickasaw Nation. At the time of the enactment of this statute the government was having a good deal of trouble with intruders, not members of the tribe, who were endeavoring, by altering and confusing the boundaries of reservations, and by making settlements on Indian reservations, to appropriate the lands of the tribe, or to make use of the same. We think this is clear from the language of the statute, which provides that persons making settlements on such lands, or undertaking to survey or otherwise designate the boundaries

thereof, might be removed by the President of the United States. The government certainly never intended to deprive members of the tribe of the use of its lands, or prevent them from making settlements thereon. In view of the recent legislation of Congress with respect to the Chickasaw and Choctaw Nations and the Indian Territory, I do not think the court erred in refusing in this case to entertain an action for the recovery of the penalty prescribed in this statute.

This feature of the case being disposed of, I will inquire whether the court erred in refusing to grant the permanent injunction and restraining order asked for in plaintiffs' complaint. The court below seemed to be of the opinion that under section 16 of the Curtis bill a citizen of the nation, in the possession of his approximate share of the grazing and agricultural lands of the tribe, might rent the same for town-site purposes. After careful reading of said section, I am unable to agree with the learned trial judge. As has been held in Myers vs Mathis, 2 Ind. Ter. 3 (46 S. W. 178), the title to the lands of the Chickasaw and Choctaw Nations is in the nation, and not in its citizens. A review of the legislation of Congress with respect to these Indian lands seems to me to indicate that it is the intention of the government not to permit any such use of the said lands pending allotment as will embarrass the government in equitably and fairly allotting and apportioning them among the members of the tribe. I think it was the intention of Congress to prohibit such a use or development of the lands of the tribe as would render the allotment difficult, and make an equitable distribution of the same next to impossible. Congress seems not to have intended that the town sites in existence at the time of the passage of the Curtis bill should be included in the lands to be allotted. Section 11 of the Curtis bill (Act June 28, 1898, c. 517, 30 Stat. 497) expressly states "all town sites shall also be reserved to the several tribes, and shall be set apart by the commission heretofore mentioned as incapable of allotment." Under the head of

"Town Sites" in the Atoka agreement (Ind. Ter. Stat. p. 40) a town-site commission is provided for, and in speaking of the duties of such commission the following language is used: "* * * Each of said commissions shall lay out townsites to be restricted as far as possible to their present limits, where towns are now located in the nation for which said commission is appointed." It is further provided in this section that the plat of said town must be approved, when laid out, by the Secretary of the Interior, before it shall take effect. In the act of Congress approved May 31, 1900 (31 Stat. 238, c. 598), we find the following provision: "Upon the recommendation of the Commission to the Five Civilized Tribes, the Secretary of the Interior is hereby authorized, at any time before allotment, to set aside and reserve from allotment any lands in the Choctaw, Chickasaw, Creek or Cherokee Nations, not exceeding 160 acres in any one tract, at such stations as are or shall be established in conformity with law, on the line of any railroad which shall be constructed or be in process of construction in or through either of said nations prior to the allotment of the lands therein, and this irrespective of the population of such townsite at the time. Such townsite shall be surveyed, laid out and platted, and the lands therein disposed of for the benefit of the tribe in the manner herein prescribed for townsites: provided, further, that whenever any tract of land shall be set aside as herein provided which is occupied by a member of the tribe, such occupant shall be fully compensated for his improvements thereon under such rules and regulations as may be prescribed by the Secretary of the Interior. Nothing herein contained shall have the effect of avoiding any work heretofore done in pursuance of said act of June twenty-eight, eighteen hundred and ninety-eight, in the way of surveying, laying out or platting of townsites, appraising or disposing of town lots in any of said nations, but the same, if not heretofore carried to a state of completion, may be completed according to the provisions hereof."

Under these provisions of the law I think that the position of the appellants is correct, wherein they say in their brief: "That at the date of the passage of the appropriation bill, and prior thereto, since the passage of the Curtis bill, no person, other than the town-site commission provided for in the treaty, cited above (Atoka agreement), had the right or power to lay off, map, or plat any of the public domain of the Chickasaw or Choctaw Nations into lots, blocks, streets, and alleys, and establish a town site thereon, and the right of the said commission to do so is doubted. To our minds it is clear that Congress intended to prepare the lands of these two nations for allotment, and intended by the Curtis bill and Atoka treaty to reserve all towns sites from allotment, and to make them incapable of allotment, and intended that all lands not reserved from allotment should be subject to allotment, and by a mathematical calculation (after deducting all lands reserved from allotment as town sites or otherwise) could be definitely ascertained so that the Dawes Commission could determine exactly the number of acres of land in both of these nations subject to allotment, and not reserved therefrom, and could with certainty carry out the plan of allotment, and give to each member of these tribes his proportional part of the lands in proportion to its value after the same has been classified and graded in accordance with the terms of the treaty. Congress, by the Curtis bill, and the ratification of said treaty, intended to recognize the towns built at the date of the Curtis bill, and to give to the owners of improved lots situated in said towns the preferred right to acquire title to said lots by complying with said treaty, but did not intend to confer upon any individual, or set of individuals, the right to lay out, plat, or map unimproved lands and establish town sites thereon; but, to the contrary, it was intended by Congress and the treaty makers that members of the tribe, and no person else other than those to whom the authority was and had been delegated, could appropriate any part of the public domain of these two

nations to the building of towns.    The title to the lands of these two nations is vested in the nations themselves, and not in  any individuals, as has been held by this court, and for the purpose of determining the injunction sought in this case the property is and must be treated as public property." I am of the opinion, that Congress, having exercised its powers and legislated with reference to town sites in the Chickasaw Nation, and made ample provision for the laying out and establishing of town sites, private individuals or members of said nation cannot be permitted to plat or build towns.    Appellees contend, and the court below seemed of the opinion, that the appellants had an adequate remedy at law if the acts complained of were unlawful. I do not think so.    If section 2118 were held to apply to this case the plaintiffs below would still be without a complete and adequate remedy.    The building of a town upon the lands in controversy, in my opinion, constituted a public nuisance or mischief which a court of equity, at the suit of the government by its Attorney General, has a right to enjoin and restrain on the ground that a more  complete and full remedy can be had than by an action at law.    I might instance this by various illustrations, but I think it unnecessary, for it must be clear to every mind that the scheme of allotment sought to be brought about and completed by the government would be endlessly delayed and interfered with if private members of the tribe were permitted to map, plat, lay out, and establish towns; and result in innumerable suits of law.    As to the right of the government to interfere, in cases of public nuisance and mischief, by injunction, and invoke the aid of a  court of equity, see Georgetown vs Alexandria, 12 Pet. 91, 9 L. Ed. 1012; The Coosaw Mining Co. vs State of South Carolina, 144 U. S. 550, 12 Sup. Ct. 689, 36 L. Ed. 537; The State of W.sconsin vs Cunningham, 81 Wis. 440, 51 N. W. 724, 15 L. R. A. 561; The Attorney General vs The City of Eau Claire et al., 37 Wis. 400; Attorney General vs Chicago, M. & St. P. Ry. Co., 35 Wis. 425.

The injunction sought should have- been granted, as the amended complaint stated facts 'sufficient to sustain the action in that particular.