## DENTON vs CAPITAL TOWN SITE CO.

### Opinion delivered October 19, 1904.

1. *Indian Lands—Creek Nation—Sales—To and By Non-Citizens Invalid.*

    A member of the Creek Nation has no authority to sell to a citizen of the United States the possession of or right to any of the tribal lands, notwithstanding same may be in the possession of the Indian citizen at the time.

2. *Ejectment—Indian Lands—Complaint—Demurrable When.*

    When a complaint in an action of ejectment shows the plaintiff to be a citizen of the United States claiming title to Indian lands, under a transfer from an Indian citizen, but fails to show that such lands were held by such Indian as a part of her proportionate share of the

allotable lands of the tribe, or of that of one of her minor children, same is demurrable.

Appeal from the United States Court for the Western District.

CHARLES W. RAYMOND, Judge.

Action by the Capital Town Site Company against Joe Denton. Judgment for plaintiffs. Defendant appeals. Reversed.

On August 5, 1902, plaintiffs, T. M. Stanclift and Francis R. Brennan, partners under the firm name and style of Capital Town Site Company, began their suit in ejectment against Joe Denton, defendant, by filing their complaint at law. In substance, said complaint alleges: That in the month of March, 1899, Eliza M. Baysinger was a duly recognized and enrolled member of the Creek or Muscogee tribe of Indians, in the Indian Territory, and a widow. That she had been for a number of years prior thereto in the sole, exclusive, and lawful possession of the north half of the northeast quarter of the southwest quarter, and the southeast quarter of the northwest quarter, all in section 24, township 17 north, range 13 east of the Indian meridian, in the Creek Nation. Said Baysinger segregated the aforesaid tracts of land, among other lands in her possession, for town property, from the lands of the Creek tribe of Indians, and conveyed the right of occupancy and possession thereof, and the ownership of the improvements thereon, to the Capital Town Site Company, which was composed of T. M. Stanclift, F. R. Brennan, and others. That said deed was signed on March 15, 1899, and delivered on March 16 or 17, 1899. That on February 5, 1902, said deed was proved before a notary public by one of the subscribing witnesses thereto, and on February 8, 1902, was

filed for record in the office of the clerk of the United States Court at Muscogee, Ind. Ter., and recorded in Book S, p. 327, and the complaint sets out said deed. That after receiving said deed, and in the spring of 1899, plaintiffs fenced the portions of the lands covered by said deed which were then unfenced, erected buildings upon the lands covered by said deed, and did various other acts of possession thereon. That in the spring of 1899 plaintiffs made a tentative plat of the plats covered by their said deeds into lots, blocks, streets, alleys, and parks, and named said town Bixby. That said town site company never relinquished their rights in and to the lands shown on said plat as streets, alleys, and parks, except to the extent of allowing the public to use them as such until such time as an official plat should be made of said town. That upon said plat was a street named South Main street, and another street, crossing the same at right angles, called Wide avenue, which was 120 feet wide. That upon the south side of Wide Avenue and west side of South Main was a corner lot, 25 feet wide north and south, by 140 feet east and west, and called lot 1, block 4. That, in making the official plat of said town of Bixby, the United States surveyors cut down Wide avenue to 80 feet in width, taking all or nearly all of the 40 feet reduction off of the south side of the street, and renamed the street Second street, and renamed South Main street Main street, changing the west line very little, if any. That the corner lot on the west side of Main street and the south side of Second street, as shown on said official plat, is lot No. 1 in block No. 25, and is 50 feet north and south by 100 feet east and west, and it is upon the north half of the northeast quarter of the southwest quarter of said section 24. Said official plat is attached to the complaint, marked "Exhibit A." That on December 28, 1901, plaintiff entered into the following written agreement with one John Turner, to wit: "Bixby, I. T., December 28, 1901. The Capital Town Site Company hereby contract with John Turner to give him a right of occupancy deed free to lot number one in

block number four in the town of Bixby, I. T., according to the plat thereof, provided said Turner shall erect thereon a store building to be used for business not less than fourteen feet wide by thirty feet long, said building to be completed within three months from the date hereof. Time to be of the essence of this contract. Otherwise the lot remains the property of the Town Site Company. Said deed to be given when said building is completed as aforesaid. (Signed) Capital Town Site Company, by T. M. Stanclift and Francis R. Brennan. John Turner." Plaintiff delivered possession of said lot 1 in block 4 to said Turner under said contract. That in January, 1902, said Turner and defendant verbally notified plaintiffs that defendant had purchased said Turner's interest in said contract, and agreed to perform said Turner's part of said contract, and plaintiff told said defendant that such arrangement was all right, and defendant then took possession of said lot 1. That afterwards, and in January, 1902, the United States town site surveyors commenced to survey and plat said town of Bixby. That, upon learning that said surveyors intended to reduce the width of said Wide avenue to 80 feet, plaintiff told said Turner, who represented said defendant, to post in the said land lying between the lot described by the said Turner agreement, and what would be the south side line of said Wide Avenue, as reduced by the official survey, for said defendant, under said Turner contract, to the end that the defendant should have a right to acquire under said Turner contract a corner lot, as contemplated by the parties in making said contract, and said Turner thereupon did so; and defendant in aforesaid manner acquired the possession of lot 1 in block 25 according to said official plat. That neither said defendant, nor said Turner, nor any one for them or either of them, ever erected any building upon said lot 1, block 25, until long after April 1, 1902, and no building was ever upon said lots during the three months stated in said Turner agreement. That in April, 1902, plaintiff verbally demanded possession of said lot 1

according to the above surveys from defendant, and forbade defendant to build upon said lots according to either survey, which defendant refused to do. That plaintiff caused written demand for possession to be served upon defendant on April 22, 1902. That said defendant, after receiving said demand, declined to, and did not, surrender possession of the property described in said notice, but refused to do so, and at the time said notice was served there was no building erected upon or commenced upon said lot. That defendant is in unlawful possession of said lot 1 in said block number 25, and has been since March 29, 1902, during all of which time the said plaintiffs have had the right of occupancy thereof, and still have the same, and right to possession thereof, whereby they have been damaged in the sum of $100. For further cause of action, plaintiffs say that in January, 1902, they were in possession of, and owned the right of occupancy of, lots numbered 8 and 9 in block numbered 22 in the town of Bixby, Creek Nation, Ind. Ter., according to the official plat of said town made by the United States town site surveyors; that plaintiffs' rights in and to said lots 8 and 9 were acquired at the same time, in the same manner, and under the same conveyance, and by the same acts as their right in and to lot 1 block 4, above referred to in this complaint; that in January, 1902, defendant made a verbal contract with plaintiffs, whereby plaintiffs agreed to give defendant a right of occupancy, deed free, to said lots 8 and 9, provided that defendant would at once erect thereon a good dwelling house, having two rooms, each room to be not less than 14 feet square. Time was made of the essence of the contract—said deed to be given when said residence was completed as aforesaid; that under said verbal contract with defendant the plaintiffs surrendered to defendant possession of said lots 8 and 9; that defendant has never complied in any manner with said contract, and no house has ever been erected on said lots, or either of them, and there is no building on said lots; that in April, 1902, plaintiffs verbally demanded possession

of said lots 8 and 9 from defendant, and defendant refused to surrender them; that afterwards, and in April, 1902, plaintiffs caused a written demand for possession of said lots 8 and 9 to be served on defendant, and defendant again refused to surrender said lots, or either of them, and denied plaintiff's rights therein; that the defendant is in unlawful possession of said lots 8 and 9, and has been since March 29, 1902, during all of which time said plaintiffs have had the right of occupancy to said lots 8 and 9, and still have the right to the possession thereof; that, by reason of the said wrongful possession of said lots by said defendant, they have sustained damages in the sum of $50, and pray judgment for recovery of said lots 1 in block 25, and 8 and 9 in block 22, and for the possession thereof, and for damages in the sum of $50. On September 2, 1902, defendant filed a demurrer to plaintiffs' complaint, as follows: "Comes now Joe Denton, the above-named defendant, by his attorney, and demurs to the plaintiffs' complaint for the reason that it fails to state facts sufficient to constitute a cause of action." On March 23, 1903, said demurrer was heard to the court and overruled, and exception duly taken by defendant. Whereupon on said day the defendant filed his answer to plaintiffs' complaint, and on the same day, plaintiffs filed their reply to the answer, and the case was tried to a jury. The jury returned their verdict on March 24th, finding the issues for the plaintiffs, and upon March 25th defendant filed his motion for a new trial, which was overruled by the court. Thereafter judgment was pronounced upon the verdict, defendant excepting, and the case now stands in this court upon appeal.

*Harry Campbell, L. M. Poe,* and *N. B. Maxey,* for appellant.

*Francis R. Brennan,* for appellees.

GILL, J. The first assignment of error mentioned by appellant, is the action of the court in overruling the demurrer

interposed to the complaint in this action. The ground of the demurrer to the complaint is that it fails to state a cause of action, for the reason that plaintiffs' allegations show that they were disqualified from taking or holding the lands in controversy; they being United States citizens, and the lands sought to be conveyed by Mrs. Baysinger being Creek lands situated in the Creek Nation; defendant's argument being that, if they were disqualified from taking or holding such lands, they could give nothing to defendant, and consequently could recover nothing from the defendant. From this contention, if it be well taken, it will be unnecessary to examine the other assignments of error in the case. Section 2118 of the Revised Statutes of the United States is as follows: "Every person who makes a settlement on any lands belonging, secured or granted by treaty with the United States to any Indian tribe, or surveys or attempts to survey such lands, or to designate any of the boundaries by marking trees or otherwise is liable to a penalty of one thousand dollars. The President may moreover take such measures or employ such military force as he may judge necessary to remove any such person from the lands." Section 17 of the act of Congress approved June 28, 1898, c. 517, 30 Stat. 501, reads as follows: "That it shall be unlawful for any citizen of any one of said tribes to inclose or in any manner by himself or through another, directly or indirectly, to hold possession of any greater amount of lands or other property belonging to any such nation or tribe than that which would be his approximate share of the lands belonging to such nation or tribe, and that of his wife and minor children as per allotment herein provided, and any person found in such possession of lands or other property in excess of his share and that of his family, or have the same in any manner enclosed after the expiration of nine months from the passage of this act shall be deemed guilty of a misdemeanor." It is nowhere alleged in the complaint that Eliza M. Baysinger was holding this land as part of her approximate share of the lands of the Creek Nation, or for any of her minor

children. Plaintiffs' allegations are that they obtained their right of possession to these lands through a deed from Mrs. Baysinger. It is true, they allege further that, before the conveyance of the land, Mrs. Baysinger, a Creek citizen, had segregated the land from the Creek Nation for town site purposes. It is also true that this court has held that an Indian, being in possession of his approximate share of the lands in the nation to which he belongs, may plat the same into a town site, and may lease the same. United States vs Lewis 5 Ind. Ter. (76 S. W. 299). But this court never at any time has said, nor is there any provision of law whereby a member of one of the tribes can sell to a United States citizen the possession or right of any of the tribal lands. The complaint in this action alleges directly a sale from a member of the Creek Nation to them of the lands sought to be covered in this action—something that is positively inhibited by the Statutes. Turner et al vs Gilliland 4 Ind. Ter. (76 S. W. 253). The Indian could not sell these lands, or the right to these lands, and could not convey the same, nor contract to do so. In this case the allegations of the complaint do not show that Mrs. Baysinger held these lands as a part of her allottable portion in the Creek Nation. If these lands at the date of this conveyance were not in her possession as her allottable portion thereof, she would be unable to transfer them even to another Creek citizen. If she could not transfer them to another Creek citizen, she certainly could not transfer them to a United States citizen, nor could she put another United States citizen in legal possession of them. To hold that a United States citizen could go to any part of the Creek Nation, make a contract with a Creek citizen for the sale of lands in the Creek Nation, plat such lands into a town, and sell parcel of land in such town to other individuals, and make contracts enforceable in law, when the law positively inhibits such action, is to ask the court to do something that it cannot do. Holford vs James, 4 Ind. Ter. Rep. 632 (76 S. W. 263).

We must hold in this case that this demurrer was well taken, and should have been sustained by the court below, and the action dismissed; and the case is therefore reversed and remanded, with directions to the court below to sustain the demurrer and proceed in accordance with law.

TOWNSEND and CLAYTON, JJ., concur.