CAPITAL TOWNSITE CO. VS FOX ET AL.

Opinion delivered October 27, 1906.

(90 S. W. Rep. 614).

1. *Indians—Secretary of the Interior, Extent of Authority of.*

Under the agreement with the Creeks, approved March 1, 1901, the Secretary of the Interior is vested with the sole power of directing and controlling the allotment of lands and the designating of town sites, and the execution of all and singular provisions of said agreement so far as Congress deemed necessary for the United States Government to act.

2. *Courts—Jurisdiction with Reference to Acts of Administrative Officers.*

Courts have jurisdiction to pass upon the acts of administrative officers of the government, but before they undertake to exercise such jurisdiction, it must clearly appear that the officer is violating the laws in the discharge of his duties; and when such complaint is made by an individual it must appear that some right of his has been denied or trespassed upon by said officer.

3. *Indians—Conveyance by, to Non-Citizen.*

An Indian cannot convey title to lands to a United States citizen, nor can said citizen take title from an Indian.

4. *Same—Right to Plat Allotment Into a Townsite.*

An Indian who has taken his pro rata share of the lands of the Nation to which he belongs, may plat same into townsite, and may lease the same.

Appeal from the United States Court for the Western District of the Indian Territory; before Justice Louis Sulzbacher, December 9, 1904.

Suit by the Capital Townsite Company against Charlie Fox and others. From a decree in favor of defendants, complainant appeals. Affirmed.

On September 7, 1904, the plaintiffs, T. M. Stanclift and Francis R. Brenan, partners under the firm name of Capital Townsite Company, filed their complaint in equity, and alleged they are citizens of the United States, that defendant Dickman is a citizen of the United States, and that defendant Charlie Fox is a citizen of the Creek Nation of Indians; that under section 27 of the act of Congress approved June 28, 1898 (30 Stat. 504, c. 517), the Secretary of the Interior was authorized to locate an Indian inspector in the Indian Territory, who may, under his authority and direction, perform any duties required of the Secretary of the Interior by law relating to affairs therein; that soon after Inspector J. George Wright was appointed; that in March, 1899, Eliza M. Baysinger, a member of the Creek Tribe of Indians, segregated the N. W. ¼ and the N. ½ of the S. W. ¼ of section 24, township 17 N., range 13 E. of Indian meridian, which she was and had been in possession of for some years, for townsite purposes, and conveyed the right of occupancy and possession thereof, and the ownership of the improvements thereon, to the Capital Townsite Company, then composed of plaintiffs and J. A. Friend and C. H. Robbins, with the exception of two residence blocks and one 50-foot business lot. A deed was signed March 15, 1899, and was delivered March 17, 1899, and after same was delivered, and on same date, Friend and Robbins, by an indorsement on back of said deed, conveyed all their interest to the remaining members of the said Capital Townsite Company. On February 5, 1902, said deed was proved by one of the subscribing witnesses, and February 8, 1902, was filed for record, and the same is fully set out in the complaint. Plaintiffs further allege: That in the spring of 1899 they fenced the portions of the land unfenced,

erected buildings, and took actual possession of said lands, and made a plat of the W. ½ 'of said section 24, and made same a part of their complaint. That a town named "Bixby" was started upon said half section, and several different railroads surveyed lines across said land. That in the spring of 1899 a large number of people petitioned the United States Commission to the Five Civilized Tribes to reserve said half section for townsite purposes. That said commission complied, until an investigation could be had. That said town has over 200 people, and would be very much larger and more prosperous if said Indian Inspector Wright had not unlawfully and wrongfully used the power vested in him to injure and oppress said town and prevent its growth. That the ninth paragraph of section 10 of the act of Congress, approved March 1, 1901, c. 676, 31 Stat. 864, to ratify an agreement with the Creek Tribe of Indians, contains the following: "Provided further, that the exterior limits of all townsites shall be designated and fixed at the earliest practical time under rules and regulations prescribed by the Secretary of the Interior." "It shall not be required that the townsite limits established in the course of the platting and disposing of town lots and the corporate limits of the town, if incorporated, shall be identical, or coextensive, but such townsite limits and corporate limits shall be so established as to best subserve the then present needs and the reasonable prospective growth of the town, as the same shall appear at the times when such limits are respectively established." That it was the duty of the Secretary, under said provision, to prescribe rules and regulations, or to instruct the Indian inspector to do so. That sections 11, 12, 13, and 14 of said act of Congress gave to plaintiffs vested rights to purchase lots in said town of Bixby at much less than their value, and to perfect title in themselves, and before appraisement to sell to others lots, which would enable such purchasers to perfect

title in themselves, and plaintiffs to thus realize profits for themselves from such sales. That the Secretary of the Interior never prescribed any rules and regulations. That the Secretary of the Interior directed said Wright, as United States Indian inspector for the Indian Territory, to proceed to establish the exterior limits of town in the Indian Territory as provided by the various acts of Congress, such limits to be so established as to best subserve the then present needs and the reasonable prospective growth of the town, as the same shall appear at the time such limits are respectively established, and that the limits should be carefully marked on the ground and diagrams thereof, showing the land subdivisions, forwarded for the special consideration of the department in each instance and to keep the area of said towns down to the minimum. That said instructions by the Secretary to said inspector were all that was necessary under said section 27 of said act of June 28, 1898. That said inspector never prescribed any rules and regulations, but arbitrarily fixed the limits of said town himself, consulting no one but Porter, the principal chief of the Creek Tribe of Indians, and by including only 80 acres within the exterior limits of said town these plaintiffs were greatly injured thereby, not only as to their property left outside of the exterior limits as officially platted as stated herein, but by the great depreciation in value of their lots left inside of said exterior limits. Plaintiffs allege that the failure to prescribe just and equitable rules and regulations, and to act in conformity with the same, denied to these plaintiffs due process of law, and that said inspector had no authority to act otherwise, and that his action in fixing the exterior limits, without consulting any one interested in said townsite, was unjust, inequitable, unlawful, and fraudulent, and not in compliance with the law; that his conferences and consultations with Porter, principal chief, were in secret, and that said Porter was prejudiced against the town of Bixby, and exercised undue influence in causing said

inspector to thus take the illegal action he did; that said inspector told the Commission to the Five Civilized Tribes that the S. E. ¼ of the N. W. ¼, the E. ½ of the S. W. ¼ of the N. W. ¼, and the N. ½ of the N. E. ¼ of the S. W. ¼, of said section 24, was all the land that was embraced in said townsite of Bixby as officially designated, fixed, surveyed, and platted; that said Commission, after receiving said information, allotted the N. W. ¼ of the S. W. ¼, the W. ½ of the S. W. ¼ of the N. W. ¼, and the S. ½ of the N. E. ¼ of the S. W. ¼ to Ada Fox, and the N. ½ of the N. W. ¼ to Charlie Fox, all of said lands allotted as aforesaid being on said section 24, and forming part of the townsite of Bixby as reserved for it by the Commission to the Five Civilized Tribes and as segregated for it by said Baysinger. Plaintiffs state that the N. ½ of the N. W. ¼ of said section 24, the same being that part of the townsite of Bixby allotted to said Charlie Fox as aforesaid, has been at all times, and still is, a necessary part of said townsite of Bixby. Plaintiffs allege that all the land allotted to defendant Charlie Fox, except block 69, owned by Eliza M. McGuire, they "held possession of, and had the right of occupancy of, all the rest of the lands allotted to defendant, Charlie Fox, on said section 24 as aforesaid, and not stated as being held by said McGuire, and all the improvements thereon, which were extensive and valuable, and still have. Plaintiffs state that after said lands on said section 24 were allotted to defendant Charlie Fox, as aforesaid, he took unlawful possession thereof from plaintiffs and from said Lawmaster and without their consent, or the consent of any of them, of all of said N. ½ of said N. W. ¼ of said section 24, except block 69, and has at all times since then retained unlawful possession thereof and now unlawfully keeps plaintiffs out of possession of all of said N. ½ of said N. W. ¼, except said block 69, without their consent; that said Charlie Fox's only claim to allot the lands allotted to him as aforesaid on said section 24 was that he was a duly enrolled and recognized

Creek citizen, and, as such, was entitled to allot said lands. Plaintiffs pray that the defendant Charlie Fox be decreed to hold in trust for plaintiffs all of the N. ½ of said N. W. ¼ of said section 24, except said block numbered 69;        *        *        * that said Charlie Fox's said deed to said land be canceled and held for naught, in so far as it attempts and purports to convey to the defendant Charlie Fox any interest in and to said land adverse to the interests of plaintiffs, as set forth herein, and that the court enter a decree vesting the title to said land in plaintiffs and passing the title of such property without any act to be done on the part of the defendants; that a writ of possession may issue to put the plaintiffs in possession of such property; that the defendant Charlie Fox be required to account to plaintiffs for the rents and profits of said land since he has been in possession thereof, and that the defendant Dickman be decreed to have no right, title, or interest in and to said property or any part thereof," and for costs.

Defendants demur to plaintiffs' complaint, as follows: "Demurrer to complaint. Comes the defendants and demur to the complaint of plaintiffs filed herein, first, because said complaint does not show that T. M. Stanclift and Francis R. Brennan, partners under the firm name and style of Capital Townsite Company, and in any other capacity whatever, had any right, title, or interest in or to the premises in controversy; second, because this court is without jurisdiction to inquire into the matter of how much land should have been or was set apart by the officers and agents of the Interior Department for the townsite of Bixby, I. T.; third, because the facts stated in said complaint do not entitle the plaintiffs to the relief prayed for therein; fourth, because said complaint does not state facts sufficient to constitute a cause of action. Wherefore defendants pray that said suit be dismissed at the cost of the plaintiffs. Mars & Mars. Preston C. West. Attorneys for Defendants."

"And thereafterwards, on the 9th day of December, 1904, comes on to be heard the demurrer of the defendants filed herein to the complaint of the plaintiffs, and the court, having heard the argument of counsel and being well and sufficiently advised therein, doth sustain said demurrer and orders that bill be dismissed, at plaintiffs' cost.   To all of which the plaintiffs duly except, except to judgment, and pray an appeal in open court to the United States Court of Appeals of the Indian Territory."

*Francis R. Brennan*, for appellant.

*Preston C. West* (Mars & Mars, of counsel), for appellees.

TOWNSEND, J.   (after stating the facts).   The appellant has filed two specifications of error, as follows:   "(1)   The court erred in sustaining defendants' demurrer to plaintiffs' complaint (a) because the complaint does show that appellants, the plaintiffs below, have a right, title, and interest in and to the lands in controversy; (b) because the court had and has jurisdiction to inquire into the matter of how much land should have been and was set apart by the officers and agents of the Interior Department for the townsite of Bixby, I. T.; (c) because the facts stated in the complaint entitle appellant, plaintiffs below, to the relief prayed for, because they entitle them to equitable relief and because defendants' third ground of demurrer is not a ground for demurrer under section 5028, Mansfield's Digest of Arkansas Statutes, in force in Indian Territory; (d) because the complaint states facts sufficient to entitle plaintiffs to maintain this suit and to entitle them to equitable relief.   (2)   The court erred in dismissing plaintiffs' bill at plaintiffs' costs on sustaining the demurrer."

The   first   specification   appellant   divides   into   three propositions   as   follows:   "First   proposition:   Has   the   court

jurisdiction to inquire into the matter of how much land should have been set aside, platted, and sold under the Creek agreement, approved March 1, 1901, and of the acts of the Department of the Interior in regard thereto? Second proposition: Could a United States citizen in possession of lands as town property adjoining to a recognized town and held by him as a part of said townsite object to being left outside of the exterior limits on the ground that the ninth paragraph of section 10 of Creek agreement had not been complied with, to his injury, and, if so, what kind of a right or title would he have to have to be in a position to object? Third proposition: Could a property owner in said unincorporated town' object on the ground that the area of the townsite was made so small as to injure the value of his property therein?" We have examined with some care the provisions of the Creek agreement, approved March 1, 1901, and we find that the Secretary of the Interior is clothed with the sole power of directing and controlling the allotment of lands and the designating of townsites, and the execution of all and singular the provisions of said agreement, so far as the Congress of the United States deemed necessary for the government of the United States to act; and, for fear that some question might be raised by some one as to the Secretary's power and authority, they added section 45 of said agreement (chapter 676, 31 Stat. p. 872), which is as follows: "All things necessary to carrying into effect the provisions of this agreement, not otherwise herein specifically provided for, shall be done under authority and direction of the Secretary of the Interior." It is undoubtedly true that the courts have jurisdiction to pass upon the acts of the administrative officers of the government, but before they undertake to exercise such jurisdiction it must clearly appear that the officer is violating the laws in the discharge of his duties; and, when an individual complains of the action of such an officer, it should appear that some right of said individual had been denied or trespassed upon by the

action of said officer. Without going through the authorities furnished by appellants, we are confident that the principle here stated will be found substantially to exist in all of them. That brings us to the consideration of the allegations of plaintiffs' complaint, as the demurrer admits all the material allegations of the same.

The first allegation that we care to notice is that the plaintiffs, as United States citizens, show that they purchased some 240 acres of land from an Indian woman, who, it is alleged, had been in possession of same for some years. Now nothing is better settled in this jurisdiction than that an Indian cannot convey lands to a United States citizen, nor can said citizen take title from an Indian. In Turner et al. vs Gilliland (Ind. Ter.) 76 S. W. 254, the court says: "W. H. Warner, the defendant Turner's grantor, being a white man, took nothing by his purchase, because the law does not permit a white man to acquire the title to land which an Indian holds in the Choctaw or Chickasaw Nation, and therefore Turner acquired nothing by his deed from Warner; and the same is true as between the plaintiff and the defendant Gillenwater, Turner's lessee. Therefore they are both without title from that source, and their deeds would not be admissible as evidence in this case." In Denton vs Capital Townsite Company (Ind. Ter.) 82 S. W. 854, the court says: "It is also true that this court has held that an Indian, being in possession of his approximate share of the lands in the nation to which he belongs, may plat the same into a townsite, and may lease the same. United States vs Lewis (Ind. Ter.) 76 S. W. 299. But this court never at any time has said nor is there any provision of law whereby a member of one of the tribes can sell to a United States citizen the possession or right of any of the tribal lands. The complaint in this action alleges directly a sale from a member of the Creek Nation to them of the lands sought to be covered in this action—something

that is positively inhibited by the statutes." It thus appears from the complaint that the appellants have no interest in the land, and consequently do not occupy a position to complain of the action of the Secretary of the Interior, or any other officer mentioned in said complaint; and until they secure some property interests or rights, and can show that they have been denied their rights, or their property interests have been interfered with or trespassed upon, they have no cause of action.

It is our opinion that the judgment of the lower court in sustaining the demurrer and dismissing the complaint was correct, and it is therefore affirmed.

CLAYTON and GILL, JJ., concur. RAYMOND, C. J., not participating.