## FAWCETT v. HILL.

No. 1000.   Opinion Filed June 27, 1911.

Rehearing Denied September 26, 1911.

(118 Pac. 132.)

**INDIANS — Lands — Allotment — Contracts — Town Sites.**   Plaintiff brought action of ejectment to recover possession of certain lots in an addition to the town of H., in the Creek Nation, deraigning title through an allotment duly and regularly made by a Creek freedman, selected June 21, 1901, and for which patent was afterwards issued.   Defendant answered, setting up facts from which it appeared that the land embraced in the allotment was on the 14th day of November, 1898, included within the corporate limits of the said town of H., and that one B., defendant's grantor, had, prior to 1900, secured the possessory right of the Creek citizens then lawfully in possession of the same and had improved the same by erecting a dwelling and placing other improvements thereon; that thereafter, and on November 17, 1901, the town site of H. was segregated and approved by the proper authorities, from which was excluded the improved lots in controversy; that, thereafter, and in the spring of 1902, defendant purchased the property and possession of the said B., and is claiming title to and attempting to hold and occupy the same thereunder.   To this answer plaintiff filed a demurrer, which was by the trial court sustained. **Held,** not error.

(Syllabus by the Court.)

*Error from District Court, Hughes County; John Caruthers, Judge.*

Action by Jesse H. Hill against L. S. Fawcett.   Judgment for plaintiff, and defendant brings error.   Affirmed.

*L. S. Fawcett, pro se.*

*N. A. Gibson* and *H. C. Thurman,* for defendant in error.

DUNN, J.   This case presents error from the district court of Hughes county.   December 20, 1905, defendant in error, as plaintiff, filed his complaint against plaintiff in error in the United States Court for the Western District of the Indian Territory, sitting at Wewoka.   The action was one in ejectment, the purpose of which was to secure possession of certain property claimed by plaintiff, and which it was alleged the defendant un-

lawfully retained. The property involved consisted of certain lots in what was known as "Lewis' Addition to the town of Holdenville," plaintiff deraigning title thereto through Elzora Lewis, a Creek freedman who had regularly selected the same for allotment June 21, 1901, and for which she afterwards received a patent, in all respects according to law. Thereafter her restrictions were removed and the said property was platted into lots, blocks, streets, and alleys as an addition to Holdenville, and the lots in question were purchased by plaintiff. To the complaint filed the defendant answered at length, basing his claim upon the fact that prior to the selection and allotment of the said land by the said Elizora Lewis the inhabitants of the village of Holdenville had selected 640 acres of land for town-site purposes to be known and designated as the town of Holdenville, I. T.; that as a part of the lands so selected and designated was the land embraced in the allotment of the said Elzora Lewis; that the incorporation was effected in the United States Court of the Indian Territory sitting at Muskogee under and by virtue of the terms of Mansfield's Digest. It was made to appear that one Brace some time in 1899 or 1900 purchased the possessory right of the Creek citizens who were then lawfully in possession of the land in question, and improved the same by fences, orchard, and building a dwelling house, etc., thereon. On November 17, 1901, the United States government made and approved the plat of the town site of said town excluding therefrom the allotment of the said Elzora Lewis, within which, as we have seen, was located the property here under contest. Thereafter this defendant, in the spring of 1902, purchased from the said Brace all of his present and contingent interest in the land and entered into the possession thereof, and has continued in the possession of the same to the time of this action. The question presented is, Has defendant any right, title, or interest in and to the land either legal or equitable; and this, in our judgment, should be determined in the negative. There is no claim made that either Brace or the defendant were Creek citizens. Whatever rights they had must be found in the statute, as the rights which

parties enjoyed in and to the lands of the Creek Nation were statutory in their origin, and Congress had plenary authority to legislate thereon. A portion of section 10 of Act Cong. March 1, 1901, c. 676, 31 Stat. 861, 864, dealing with town sites in the Creek Nation, reads as follows:

"That the Secretary of the Interior is hereby authorized, under rules and regulations to be prescribed by him, to survey, lay out, and plat into town lots, streets, alleys, and parks, the sites of such towns and villages in the Choctaw, Chickasaw, Creek, and Cherokee Nations, as may at that time have a population of two hundred or more, in such manner as will best subserve the then present needs and the , reasonable prospective growth of such towns. * * * It shall not be required that the town-site limits established in the course of the platting and disposing of town lots and the corporate limits of the town, if incorporated, shall be identical or coextensive, but such town-site limits and corporate limits shall be so established as to best subserve the then present needs and the reasonable prospective growth of the town, as the same shall appear at the times when such limits are respectively established: Provided further, that the exterior limits of all town sites shall be designated and fixed at the earliest practicable time under rules and regulations prescribed by the Secretary of the Interior."

These provisions are then followed by provisos fixing the rights of those who were occupants and in rightful possession of lots and improvements within the town sites so established, which are as follows:

"(11) Any person in rightful possession of any town lot having improvements thereon, other than temporary buildings, fencing, and tillage, shall have the right to purchase such lot by paying one-half of the appraised value thereof, but if he shall fail within sixty days to purchase such lot and make the first payment thereon, as herein provided, the lot and improvements shall be sold at public auction to the highest bidder, under direction of the appraisement commission, at a price not less than their appraised value, and the purchaser shall pay the purchase price to the owner of the improvements, less the appraised value of the lot.

"(12) Any person having the right of occupancy of a residence or business lot or both in any town, whether improved or not and owning no other lot or land therein, shall have the

right to purchase such lot by paying one-half of the appraised value thereof.

"(13) Any person holding lands within a town occupied by him as a home, also any person who had at the time of signing this agreement purchased any lot, tract or parcel of land from any person in legal possession at the time, shall have the right to purchase the lot embraced in same by paying one-half of the appraised value thereof, not, however, exceeding four acres."

The act also provides for the reservation of certain other lands within the Creek Nation, and a portion of sections 2 and 3 thereof reads as follows:

"Sec. 2. All lands belonging to the Creek Tribe of Indians in the Indian Territory, except town sites and lands herein reserved for Creek schools and public buildings, shall be appraised at their true value. * * *

"Sec. 3. All lands of said tribe, except as herein provided, shall be allotted among the citizens of the tribe by said commission so as to give each an equal share of the whole in value, as nearly as may be, in manner following. * * *"

From the foregoing it will be observed that no provision whatever is made to give any relief in the situation in which defendant finds himself. He, however, presses a contention that in some manner he acquired rights under and by virtue of the incorporation of the town or village of Holdenville under the statutes of Arkansas, but herein he apparently fails to perceive the distinction between an incorporated town or village and a town site as generally understood and used in the statutes pertaining thereto. The distinction is noted in the case of *Rice et al. v. Colorado Smelting Co.,* 28 Colo. 519, 66 Pac. 894, a town site being there denominated as a portion of the public domain which is segregated from the great body of government land by the proper procedure and authority as a site for a town. A town, of course, may thereafter be incorporated on such town site, but the town and the town site are two separate and distinct things. And the statute from which we have quoted (section 10) takes note of the distinction here drawn, wherein it provides that "it shall not be required that the town-site limits established in the course of the platting and disposing of town lots and

the corporate limits of the town, if incorporated, shall be identical or coextensive," etc. The land here involved was land belonging to the Creek Tribe of Indians, was not included within a town site, nor was it reserved, and being properly allottable under the provisions of the statute above noted, and having been duly allotted, defendant's grantor at the time of his purchase had no title to the land which he could sell to defendant, and hence defendant received nothing. The question involved in this case has been substantially passed upon in the cases of *Denton v. Capital Townsite Co.,* 5 Ind. T. 396, 82 S. W. 852, and *Capital Townsite Co. v. Fox et al.,* 6 Ind. T. 223, 90 S. W. 614.

The motion to dismiss filed in this court and by it passed on June 28, 1910, disposes of plaintiff's contention that the lower court erred in not dismissing the action for want of prosecution.

No error having been made to appear, the judgment of the trial court in sustaining a demurrer to defendant's answer is affirmed.

All the Justices concur.