STANCLIFT et al. v. FOX et al.

(Circuit Court of Appeals, Eighth Circuit. March 30, 1907.)

No. 2,402.

INDIANS—INDIAN LANDS—TOWN SITES IN CREEK NATION—SECRETARY OF INTERIOR—DECISION—REVIEW.

Act Cong. March 1, 1901, c. 676, 31 Stat. 861, ratifying the agreement between the United States and the Creek tribe in the Indian Territory, authorized the Secretary of the Interior to survey and lay out town sites in the Creek Nation, the limits thereof to be so established as to best

subserve the then present needs and the reasonable prospective growth of such towns, and declared that all things necessary to be done, not otherwise specially provided for, should be done under the authority and direction of such Secretary. *Held*, that the extent of each site was to be measured by the then present needs and the reasonable prospective growth of the town, that the decision of this question of fact was intrusted to the Secretary of the Interior, whose action was to be final, and that, if not intended to be conclusive, it is at least controlling, in the absence of a clear, unequivocal, and convincing showing that it was wrong and was induced by fraud or imposition.

Appeal from the United States Court of Appeals in the Indian Territory.

For opinion below, see 90 S. W. 614.

Francis R. Brennan, for appellants.

Preston C. West, F. L. Mars, and J. J. Mars, for appellees.

Before VAN DEVANTER and ADAMS, Circuit Judges, and PHILIPS, District Judge.

VAN DEVANTER, Circuit Judge. The controversy presented by the record in this case relates to the title to certain lands in the Creek Nation in the Indian Territory, and grows out of the designation of the exterior limits of a town site, by the Secretary of the Interior, under the following provisions of section 10 of an agreement between the United States and the Creek tribe, which was ratified by Congress March 1, 1901, and became effective May 25, 1901 (Act March 1, 1901, c. 676, 31 Stat. 861; Proclamation June 25, 1901, 32 Stat. 1971):

"All towns in the Creek Nation having a present population of two hundred or more shall, and all others may, be surveyed, laid out, and appraised * * * (by) the Secretary of the Interior * * * under rules and regulations to be prescribed by him, * * * in such manner as will best subserve the then present needs and the reasonable prospective growth of such towns. * * *

"The Secretary of the Interior, where in his judgment the public interests will be thereby subserved, may permit the authorities of any town * * * at the expense of the town, to survey, lay out, and plat the site thereof, subject to his supervision and approval, as in other instances. * * *

"It shall not be required that the townsite limits established in the course of the platting and disposing of town lots and the corporate limits of the town, if incorporated, shall be identical or coextensive, but such townsite limits and corporate limits shall be so established as to best subserve the then present needs and the reasonable prospective growth of the town, as the same shall appear at the times when such limits are respectively established. Provided further, that the exterior limits of all townsites shall be designated and fixed at the earliest practicable time under rules and regulations prescribed by the Secretary of the Interior.

"Upon the recommendation of the Commission to the Five Civilized Tribes, the Secretary of the Interior is hereby authorized at any time before allotment to set aside and reserve from allotment any lands * * *, not exceeding one hundred and sixty acres in any one tract, at such stations as are or shall be established in conformity with law on the line of any railroad which shall be constructed or be in process of construction * * *, and this irrespective of the population of such townsite at the time. Such townsites shall be surveyed, laid out, and platted, and the lands therein disposed of for the benefit of the tribe in the manner herein prescribed for other townsites."

These provisions, in so far as they apply to towns having a population of 200 or more, had been in force in the Creek Nation since May 31, 1900, by reason of their incorporation in the Indian appro-

priation act of that date.  Act May 31, 1900, c. 598, 31 Stat. 221, 237.

The agreement contained specific provisions respecting the appraisement and sale, under the supervision of the Secretary of the Interior, of the lots in town sites surveyed and laid out thereunder, certain preferences being accorded, in that connection, to owners of improvements and others, and also directed that all lands of the tribe, except as therein otherwise provided, should be allotted in severalty, by the Commission to the Five Civilized Tribes, so as to give to each member of the tribe an equal share of the whole in value.

The gravamen of the appellant's complaint is that in surveying and laying out the town site of Bixby, an unincorporated town having a population of 200 or more, the Secretary of the Interior restricted the town site to 80 acres and declined to include therein the lands now in controversy; in other words, that, although the Secretary found and concluded, as his act necessarily imports, that the then present needs and the reasonable prospective growth of the town did not require that these lands be included in the town site, the fact was actually otherwise.

The title and ownership of the Creek lands, including those now in controversy, being in the tribe at that time, whether or not any of them should be surveyed, laid out, and disposed of as town sites, and, if so, to what extent and through what agency this should be done, were matters which it was competent to determine in the agreement.  In keeping with the prior legislation of Congress, it was therein determined that some of these lands, and particularly those upon which there were towns having a present population of 200 or more, should be surveyed, laid out, and disposed of as town sites; that the extent of each site should be measured by the then present needs and the reasonable prospective growth of the town; and that the decision of this question of fact should be intrusted to the Secretary of the Interior.  The agreement contains no indication of an intent that his decision should be subject to re-examination elsewhere, and, considering the nature of the question, the direction that the exterior limits of each site should be designated "at the earliest practicable time," and the evident purpose that the allotment of adjacent lands should proceed expeditiously, we think it was intended to make his decision final.  United States ex rel. v. Hitchcock (decided March 4, 1907) 27 Sup. Ct. 423, 51 L. Ed. ——.  And it is not without significance in this connection that one of the concluding provisions of the agreement declares:

"All things necessary to carrying into effect this agreement, not otherwise herein specifically provided for, shall be done under authority and direction of the Secretary of the Interior."

As measurably relevant, we quote from Cragin v. Powell, 128 U. S. 691, 697, 9 Sup. Ct. 203, 206, 32 L. Ed. 566, as follows:

"The mistakes and abuses which have crept into the official surveys of the public domain form a fruitful theme of complaint in the political branches of the government.  The correction of these mistakes and abuses has not been delegated to the judiciary."

But, if the decision of the Secretary of the Interior be not so conclusive as we have stated, it is at least controlling in the absence of a clear, unequivocal, and convincing showing that it was wrong and

was induced by fraud or imposition. The appellant's complaint does not contain such a showing. It makes liberal use of such words as "fraudulent," "arbitrary," and "injurious," but the matters properly stated are not sufficient, in our opinion, to sustain the pleader's conclusion. There is no statement that any of the lands in controversy, which comprise 80 acres, were used for town purposes, and what is said in respect of their occupancy and state of improvement is not only indefinite, but is largely in the nature of an explanation of why "houses were not erected thereon" and why they were not used for purposes of business or residence. And, while much is said about the prospective growth of the town, it does not tend with any certainty to show that the Secretary's decision was wrong in point of fact.

It is alleged that this decision was in reality made by one of the clerks in the Department of the Interior, and that its approval by the Secretary was a mere perfunctory act without any personal consideration of the merits. But of this it is sufficient to observe that in De Cambra v. Rogers, 189 U. S. 119, 23 Sup. Ct. 519, 47 L. Ed. 734, it was said of a like allegation:

"It is hardly necessary to say that, when a decision has been made by the Secretary of the Interior, courts will not entertain an inquiry as to the extent of his investigation and knowledge of the points decided, or as to the methods by which he reached his determination."

Our conclusion is that the Court of Appeals in the Indian Territory rightly held that the complaint was properly dismissed (Capitol Townsite Co. v. Fox [Ind. T.] 90 S. W. 614), and its decree is accordingly affirmed.