INCORPORATED TOWN OF HARTSHORNE *et al.* v. INCORPORATED
TOWN OF HAILEYVILLE *et al.*

No. 111.    Opinion Filed September 23, 1909.

(104 Pac. 49.)

**PUBLIC LANDS—Townsites in Ind. Ter.** A town having been incorporated by virtue of section 14, Act Cong. June 26, 1898 (Curtis Bill), c. 517, 30 Stat. 499, 500, and by order of court its boundaries having been fixed, when the townsite commission, by virtue of the agreements or treaties between the United States and the Choctaw and Chickasaw Nations, laid out a townsite, not covering all the municipal area included by the order of the court fixing such limits, it has the effect of detaching from the original limits such portion of the incorporated area as was not included in the townsite limits.

(Syllabus by the Court.)

*Error from District Court, Pittsburg County; P. B. Cole, Judge.*

Action by the Incorporated Town of Haileyville and others against the Incorporated Town of Hartshorne and others. Judgment for plaintiffs, and defendants bring error. Modified and affirmed.

On the 31st day of July, 1905, the defendants in error, the incorporated town of Haileyville, A. R. Johnson, Dan Freeman, and Carl Freeman, for themselves and others similarly situated, as plaintiffs, commenced this action against the incorporated town of Hartshorne, J. R. Berry, town marshal, and *ex officio* tax collector, and C. R. Hunt, its mayor, in the United States Court for the Central District of the Indian Territory at South McAlester, by bill of complaint in equity, alleging that said towns of Hartshorne and Haileyville were incorporated, and that their incorporate boundaries, limits, and geographical jurisdiction had been fixed by the said court long prior to the time that the townsites of Hartshorne and Haileyville were established, fixed, and approved by the Secretary of the Interior; that the municipal corporate limits, lines, and boundaries of the said towns of Harts-

horne and Haileyville do not agree and conform to the townsite limits of the said towns as established by the United States government, therein specifically setting out the discrepancy. The complainants' were located within the townsite limits of Haileyville as established by the United States government, and also within the municipal corporate limits of the town of Hartshorne. The incorporated town of Hartshorne, through its city marshal and tax collector, notified the petitioners and all other persons residing within the said area that, unless all their taxes were paid, their property would be immediately advertised for sale to satisfy the requirements of the said town of Hartshorne for taxes. The relief prayed for was that the officers, marshal and tax collector of the town of Hartshorne, be restrained from in any manner collecting or attempting to collect any taxes of any kind or nature whatever from any person or persons residing on any of the said lands within the townsite of Haileyville, and from advertising, seizing, selling, or in any way attempting to sell, or in any way interfering with any of said property of any person or persons residing on or owning property on any of said lands, for any claim of taxes of any kind or nature whatsoever, until the further order of said court, and that the town authorities of said town of Hartshorne be required to eliminate from its corporate limits and boundaries the lands therein described, and that the same be annexed to, included, and made a part of the political and corporate limits of the town of Haileyville.

On the same day a temporary injunction was issued as prayed for. Afterwards the plaintiffs amended their petition, attaching thereto, and identifying the same as an exhibit, a copy of the order of the United States Court for the Central District of the Indian Territory at South McAlester, made and entered on the 25th day of October, 1902, by which the town of Haileyville was incorporated, and also a copy of the order of said court made and entered on the 1st day of March, 1900, incorporating the town of Hartshorne, was attached to said petition as an exhibit and made a part thereof. The petition for annexation was in due

form, and signed by the required number of petitioners. On the 11th day of December, 1907, the defendants demurred to the plaintiff's petition on the following grounds: (1) That the facts did not constitute a cause of action; (2) adequate remedy at law; (3) because special and adequate remedy at law exists; (4) misjoinder of parties plaintiff. On the 12th day of December, 1907, the demurrer was overruled. Defendants duly saving their exceptions and declining to plead further, judgment was rendered in favor of the plaintiffs. An appeal having been properly prosecuted from said judgment to this court, it is now here for review.

*Brewer & Andrews,* for plaintiffs in error.

WILLIAMS, J. (after stating the facts as above). The question here for determination is as to whether or not a town having been incorporated by virtue of section 14, Act. Cong. June 26, 1898, known as the "Curtis Bill" (chapter 517, 30 Stat. 499, 500), by order of the district court, and the municipal boundaries designated in such order, where the townsite commission by virtue of the agreement or treaties between the United States and the Choctaw and Chickasaw Tribes (30 Stat. 508, 509; Act July 1902, c. 1362, 32 Stat. 652, 653) laid out a townsite not covering all the area included by the order of court fixing the municipal boundary, it had the effect of detaching from such municipal limits such portion of the incorporated area as was not included in the townsite limits. Section 14, *supra,* applied to all the Five Civilized Tribes, and said agreements or treaties only to the Choctaw and Chickasaw Nations, but the treaties by express reservation did not supersede said section 14 (30 Stat. 500). The creation of municipalities is through the exercise of the power of the sovereignty. In the American states, except as otherwise provided in the state Constitutions, a municipality can be created only by a sovereign act of legislation, either general or special, by (1) the state Legislature, (2) federal Congress, or (3) territorial Legislature when so empowered by act of Congress. The district court in incorporating such towns was not exercising legislative authority. Ju-

dicially it made an adjudication as to population, number of petitioners, and other facts required to be determined. Manfs. Dig. Ark. 1884, c. 29 (Ind. T. Ann. St. 1899, c. 15). This is a usual exercise of such authority. *Mendenthal v. Burton,* 42 Kan. 570, 22 Pac. 558; *State v. Goowin,* 69 Tex. 55, 5 S. W. 678; *Mayor etc., v. Shelton,* 1 Head (Tenn.) 24; *Woods v. Henry,* 55 Mo. 560; *In re County Com'rs,* 22 Okla. 435, 98 Pac. 557; *Hill v. City of Kahoka* (C. C.) 35 Fed. 32.

The townsite commission by virtue of the treaties was clothed with both legislative and administrative authority. By special legislative act, where there is no constitutional restriction, a portion of the area of a municipality may be detached. The provision of said treaties relative to townsites superseded section 15 of the Curtis bill, *supra,* which was complementary to section 14. Said section 15 provided that the townsite commission shall cause to be surveyed and laid out townsites where towns with a population of 200 or more were located, conforming to the existing survey, so far as may be, giving to each town such territory as may be required for its then needs and reasonable prospective growth. The treaty provision superseding section 15 was substantially the same. 30 Stat. p. 508. Section 14 excludes all towns under 200 population from incorporation. Now, what is meant by the clause "giving to each town such territory as may be required for its present needs and reasonable prospective growth"? See section 15 of the Curtis bill. Was it intended to supersede where not in conformity therewith the municipal boundaries as fixed prior to that time under section 14? Such seems to be indicated by the clause in section 14 that "such city or town government shall in no case have any authority to impose upon or levy against any lands in said cities or towns any tax until after title is secured from the tribe; but all other property, including all improvements on town lots, which for the purpose of this act, shall be decreed personal property, together with all occupations and privileges, shall be subject to taxation." It seems to have been contemplated that only such area should be included in such limits as should be

platted into lots, streets, alleys, parks, etc., where the commission failed to include all of the municipal area in the townsites, it had the effect of a special legislative act, detaching such territory from said municipality.

The Indian Territory was without a local Legislature to legislate to meet the local needs. The noncitizen had taken up his abode there, and built towns and cities, without any titles to the lots and blocks upon which improvements had been placed. They had neither titles nor local self-government. Section 14 was preliminary to laying out the townsites for the vesting of titles in the parties having erected the improvements. Where the title was divested out of the tribe into the individual, the lot would be subject to taxation, but it would take time to consummate this purpose, and consequently section 14 was enacted to afford immediate local municipal government. In connection with the laying out of townsites, the balance of the lands other than that segregated for coal and asphalt deposits (30 Stat. pp. 505, 506, 507; 32 Stat. pp. 642, 643, 644) was to be allotted to the members of said tribes. The allotments were to be nontaxable while the title remained in the original allottee, not to exceed 21 years from the date of the patents; the homestead, one half of the allotment, inalienable for the same period; the surplus—the other half—alienable, one-fourth in one year, one-fourth in three years and the balance in five years from date of patents. 30 Stat. p. 507; 32 Stat. p. 643. It is not conceivable that Congress should have contemplated that any allotment under such a status should be included and retained within the boundaries of a municipality. The purpose was to permit the laying out of towns to meet the necessities occasioned by the white people congregating and settling and constructing improvements on lands belonging to the tribes. Titles to the lots on which such improvements had been placed were to be secured, and local government to preserve the peace, protect health, and promote education was to be afforded to such noncitizens. In the light of the history of the legislation, it was clearly the intention of Congress that the townsite boundaries (which were to include

a .reasonable prospective growth) were to control the municipal boundaries. A copy of the townsite plats were to be filed with the clerk of the court having jurisdiction to make the orders of incorporation, thus providing a complete record for municipal as well as other purposes. By the conclusion reached all the provisions relating to towns are harmonized, and the ends attained reasonably accord with the then local conditions.

The judgment of the lower court, in so far as it restrained the officers of the town of Hartshorne from collecting taxes from the defendants in error residing in the detached territory, is without error. That part seeking to detach the area in controversy from the incorporated town of Hartshorne, and attaching it to the incorporated town of Haileyville, is erroneous, said territory having been so affected by the prior action of the townsite commission.

The judgment is accordingly modified and affirmed.

All the Justices concur.