## COCHRAN v. HOCKER et al.

No. 1983.   Opinion Filed June 25, 1912.

(124 Pac. 953.)

**INDIANS—Lands—Town Sites—Construction of Treaty.** The town of Sapulpa was incorporated in 1898, under section 14 of the act of June 28, 1898, c. 517, 30 St. at L. 499, commonly known as the ''Curtis Act.'' Pursuant to this section, the boundaries of the town for municipal purposes were established. Section 15 of that act provided for the creation of town-site commissions and the sale of town lots by these commissions. But no action was taken under this section. Thereafter, by section 10 of the act of March 1, 1901, c. 676, 31 St. at L. 864, known as the ''Original Creek Treaty,'' different provisions were made for establishing town-site boundaries and the sale of the lots therein. Under this treaty, the town-site boundaries of Sapulpa were established, and the lands here involved were omitted from the town site. **Held,** that the owner of the improvements on these omitted lands had no vested right to purchase the land, and that the omission thereof from the town-site boundaries left the land subject to allotment.

(Syllabus by Ames, C.)

*Error from District Court, Creek County;*
*W. L. Barnum, Judge.*

Action by Agnes P. Cochran against J. W. Hocker and Harry G. Stein to restrain enforcement of a writ of possession against plaintiff for certain town lots in the city of Sapulpa and to quiet title thereto. Judgment for defendants, and plaintiff brings error. Affirmed.

*Thrift & McMullen,* for plaintiff in error.

*W. P. Root* and *Biddison & Campbell,* for defendants in error.

Opinion by AMES, C.   By section 14 of the act of June 28, 1898, 30 St. at L. 499, known as the Curtis Act, it was provided that the inhabitants of any city or town in the Indian Territory having as many as 200 residents might, by petition to the United States court, incorporate the town, as provided in chapter 29, Mansf. Dig. of Ark. (Ind. T. Ann. St. 1899, c. 15). Mansf.

Dig. of Ark., sec. 785 (Ind. T. Ann. St. 1899, sec. 555), required the petition for incorporation to be accompanied by an accurate map or plat of the town or city. Under this act, the town of Sapulpa was incorporated in 1898 by its inhabitants, and a map or plat thereof was filed with the court. By section 15 of the Curtis Act, *supra,* it was provided that town-site commissions should be appointed for each town in the Chickasaw, Choctaw, Creek, and Cherokee Nations, to consist of three members; one to be appointed by the chief executive of the tribe, one by the Secretary of the Interior, and one to be selected by the town. Such commissions were charged with the duty of surveying and laying out town sites conforming to the existing survey, so far as may be; and containing such territory as may be required for the present need and reasonable prospective growth of the town and of preparing duplicate plats; one to be filed with the Secretary of the Interior, one with the clerk of the United States court, one with the authorities of the tribe, and one with the town authorities. The town-site commission was further charged with the duty of appraising the lots within the town, and the owner of the improvements thereon was given the right to purchase at 50 per cent. of the appraised value. It does not appear from the record in this case that a town-site commission was ever appointed for the town of Sapulpa, or that it made any survey thereof; but it affirmatively appears that no appraisement was ever made under this act. By section 10 of the Creek Treaty (Act of March 1, 1901, 31 St. at L. 864, effective May 25, 1901), it was provided that the Secretary of the Interior might lay out town sites, causing them to be surveyed and platted, and thereafter appraised and sold; it being expressly provided that the town-site limits established by the Secretary need not conform to those previously established by the towns, as appears from the following:

"It shall not be required that the town-site limits established in the course of the platting and disposing of town lots and the corporate limits of the town, if incorporated, shall be identical or coextensive, but such town-site limits and corporate limits shall be so established as to best subserve the then present needs and the reasonable prospective growth of the town, as the same

shall appear at the time when such limits are respectively established: Provided further, that the exterior limits of all town sites shall be designated and fixed at the earliest practicable time under rules and regulations prescribed by the Secretary of the Interior."

Subsequent sections gave to the occupants of, and owners of, the improvements the right to purchase at half the appraised value, and prescribed the terms and conditions on which title might pass.

According to the survey made by the inhabitants of the town under the act of 1898, the lots in controversy in this case were included within the corporate limits. The plaintiff acquired possession thereof from James Sapulpa, a Creek citizen, who had previously been in possession, and she had erected improvements thereon prior to the act of 1901. Under the act of 1901, the Secretary of the Interior, in fixing the exterior boundaries of Sapulpa, excluded therefrom the lots in controversy. The plaintiff and others applied to the Interior Department for relief without success. After the land embracing these lots had been excluded from the town site, one Noah Frank, a Creek citizen, filed on the same for purposes of allotment. This filing was contested by James Sapulpa, as administrator of one Nukmelle. The contest was decided in favor of Frank and patent issued to him. Thereafter, his restrictions were removed, so as to enable him to plat the land for town-site purposes, and thereafter the defendant J. W. Hocker purchased the lots in controversy from Frank, and instituted in the United States District Court an action of unlawful detainer against the plaintiff. Judgment was rendered in his favor, and a writ of possession was issued to the sheriff out of the district court of Creek county (statehood in the meantime intervening, and the cause having been transferred to that court). This action is brought to restrain the defendants from executing that writ and to declare Hocker a trustee of the title for the benefit of the plaintiff.

The argument of the plaintiff is that, when the town of Sapulpa was incorporated in 1898, under the provisions of the Curtis Act, it existed as a municipal corporation, with limits coextensive with the survey then in existence, that persons residing

therein were citizens thereof and subject to all the rights and duties of citizens, and hence that, when the act of 1901 became effective on May 25th, persons living within those corporate limits, in possession of real estate, and owning the improvements thereon, by the terms of that act became vested with the right to purchase; and that this right could not be divested by the subsequent change in boundaries by the Secretary of the Interior.

The lands of the Creek Nation originally belonged to the nation as such, and not to the citizens thereof. They constituted the public domain of the tribe, and no member of the tribe owned any particular land, or any undivided interest therein, or any inheritable interest. They were held to a certain extent as the public domain of the United States is held. It belongs to the government. From this condition of affairs, it necessarily resulted that no citizens of the tribe could convey any right of property or possession in any land within the tribal limits. Towns and cities were built notwithstanding these conditions, because the inhabitants thereof (citizens of the United States and citizens of the tribe) were willing to take the chance upon treaties being made between the United States and the tribe, protecting these investments. The purpose of the acts referred to was in part to make possible the acquisition of title to town lots in the Indian Territory, and in so doing to recognize the rights of those who had erected improvements thereon, by giving them the right to purchase at one-half the appraised value. But these rights vested only in accordance with the terms of the treaties and upon the conditions thereby imposed. Under the Curtis Act, before the right vested, the town-site commission must be created. After its creation, it must survey the town and file the plats. After this, it must appraise the lots at their true value, excluding improvements. After this, the appraisement must be approved by the Secretary of the Interior. After this, the owner of the improvements has the option of purchasing at one-half of the appraised value, so that the preliminary steps amounted merely to an offer by the tribe and the government to the owner of the improvements, which he might accept, or not, as he chose. None of these things was done under the Curtis Act, so far as appears

from the record in this case. The first step, to wit, the appointment of a town-site commission, does not appear to have been taken, and therefore no right vested under that act. Two objects were contemplated by the town-site provisions of the Curtis Act. The first was the creation of a municipal corporation. The second was the passing of title from the Indian tribes to the settlers on the town site. Section 14 accomplished the first purpose, and section 15 was designed to accomplish the second. So far as it appears from the record in this case, nothing was done under section 15; but the town was incorporated under section 14, and the object of this incorporation was, as stated, to provide a municipal government which might levy taxes upon personal property, maintain schools, and carry on the general business of a municipal corporation. No rights having vested under section 15 of the Curtis Act, it is settled that under the provisions of the Creek Agreement, embodied in the act of 1901, the Secretary of the Interior, in establishing the town site of Sapulpa, could omit a portion of the land embraced within the corporate limits established under section 14 of the Curtis Act, and that the occupants of these omitted lands did not have the right to acquire title thereto. *Stanclift v. Fox,* 152 Fed. 697, 81 C. C. A. 623; *Capital Town-Site Co. v. Fox,* 6 Ind. T. 223, 90 S. W. 614; *Town of Hartshorne v. Town of Haileyville,* 24 Okla. 775, 104 Pac. 49.

The judgment of the trial court was entered in accordance with these principles, and we therefore think it should be affirmed.

By the Court: It is so ordered.