## COACHMAN v. SIMS *et al.*

No. 2468.  Opinion Filed January 7, 1913.

(129 Pac. 845.)

1.  **INDIANS — Wills — Disposition of Lands.**  A full-blood Creek Indian, who died in March, 1900, could not dispose, by will, of lands subsequently allotted to his heirs.

2.  **MARRIAGE—Presumptions.**  When a man and woman have been living together as husband and wife for many years, and it appears that at the time of marriage the former wife was still living, in the absence of further evidence on the subject, it will be presumed that there had been a lawful separation or a divorce between the husband and the former wife.

(Syllabus by Ames, C.)

*Error from District Court, Hughes County;*
*John Caruthers, Judge.*

Action by Nancy Coachman against B. O. Sims and Louisa Harjo. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

*Lewis C. Lawson,* for plaintiff in error.

*Warren & Miller,* for defendants in error.

Opinion by AMES, C. The first question for decision is whether a full-blood Creek Indian, who died in March, 1909, could dispose, by will, of lands subsequently allotted to his heirs.

This question must be answered in the negative.

In 1900 the lands of the Creek Nation constituted their public domain, and they were not subject to disposition by any individual citizen of the tribe. *Barnett v. Way,* 29 Okla. 780, 119 Pac. 418; *Cochran v. Hocker,* 34 Okla. 233, 124 Pac. 953; *Hayes v. Barringer,* 168 Fed. 221, 93 C. C. A. 507. It is true that at that time allotments were being selected under the Act of June 28, 1898. But this act was never ratified by the Creeks (*Barnett v. Way, supra*), although such allotments were subsequently confirmed by the Original Creek Treaty. Act of March 1, 1901, c. 676, 31 St. at L. 861. Such allotments were governed by the laws of descent and distribution of the Creek Nation. *Barnett v. Way, supra.* By section 7 of the Act of March 1, 1901, c. 676, 31 St. at L. 861, it was provided that " * * * such lands shall not be alienated by the allottee or his heirs at any time before the expiration of five years from the ratification of this agreement, except with the approval of the Secretary of the Interior." This section further provided that "each citizen shall select from his allotment forty acres of land as a homestead; * * * " and, further, that "the homestead of each citizen shall remain, after the death of the allottee, for the use and support of children born to him after the ratification of this agreement, but if he have no such issue, then he may dispose of his homestead by will, free from limitation herein imposed, and if this be not done, the land shall descend to his heirs, according to the laws of descent and distribution of the Creek Nation, free from such limitation."

As, in this case, the testator died in 1900, before the passage of the Original Creek Treaty, the homestead quality did not attach to any part of his allotment. *Parkinson v. Skelton,* 33 Okla. 813, 128 Pac. 131, citing *Hancock v. Mutual Trust Co.,* 24 Okla. 391, 103 Pac. 566, and *Mullen v. United States,* 224 U. S. 448, 32 Sup. Ct. 494, 56 L. Ed. 834. The provision, therefore, of section 7 of the Creek treaty, with reference to the disposition of the homestead by will, does not govern in this case; and it follows that it is subject to that portion of the provision prohibiting alienation, if a disposition by will is an alienation. That such a disposition is an alienation, and consequently prohib-

ited by the treaty, has been held in *Hooks v. Kennard,* 28 Okla. 457, 114 Pac. 744; *Taylor v. Parker,* 33 Okla. 199, 126 Pac. 573; *Hayes v. Barringer,* 168 Fed. 221, 93 C. C. A. 507 (8 C. C. A.), which affirms the same case as decided by the Indian Territory Court of Appeals, and reported in 7 Ind. T. 697, 104 S. W. 937. This disposes of the first question raised.

The remaining question is whether or not the plaintiff was the widow of the deceased. As has previously been stated, under the Original Creek Treaty the lands descended according to the laws of descent and distribution of the Creek Nation. *Barnett v. Way, supra; Sanders v. Sanders,* 28 Okla. 59, 117 Pac. 338; *Morley v. Fewel,* 32 Okla. 452, 122 Pac. 700; *Shellenbarger v. Fewel,* 34 Okla. 79, 124 Pac. 617. If, therefore, the plaintiff was the widow of the deceased, she inherited an interest in the land involved, and the issue of fact which was tried was whether or not she was the widow. The evidence disclosed that the deceased had been married several times. His first wife was Mohoskey. After her death he married Folotchoie. After her death he married Mitter. While Mitter was still alive, he married Millie. After Millie's death, but while Mitter was still alive, he married Nancy, the present plaintiff. This marriage occurred about 1877 or 1878, and something like five years after his marriage to Mitter. The evidence, without contradiction, disclosed that the plaintiff and the deceased had lived together as husband and wife for approximately 23 years; that during this time they had one child, which died; that they attended camp meetings together, where they occupied a tent as husband and wife, and mingled with their friends and neighbors in that capacity; that they were regarded as husband and wife in the community. The plaintiff also offered evidence tending to prove a marriage ceremony according to the customs and usages of the Creek Indians, but the court excluded this either on the ground that it was incompetent, or, if competent, the plaintiff had not pleaded the Creek law with reference to marriage. The plaintiff thereupon asked leave to amend the petition, which the court denied, on the ground that it was too late, and that he did not see how the custom of marriage would be competent. The plain-

tiff also offered evidence tending to show the custom of the Creek Indians at that time with reference to separation of husband and wife, and this was likewise excluded. If the pleading was insufficient to justify this evidence, the application to amend should have been granted, and if the amendment was not necessary the evidence should have been admitted, so, in either event, there was error; but it seems to us that, in the absence of any proof of a marriage ceremony, there was abundant proof that the marriage existed, as the fact of their living together as husband and wife for so many years would raise a *prima facie* presumption of marriage.

The only question, therefore, which is not elementary, is whether or not the mere fact that the plaintiff's third wife was living at the time of his marriage to his fifth wife is sufficient proof that the fifth marriage was in its inception adulterous and bigamous. It will be observed that the evidence is entirely silent as to whether the third wife had been divorced, and whether there had been a separation according to the laws and usages of the Creek Nation. It will also be observed that between the third and the fifth marriage there had been a fourth, and that the fourth wife was dead at the time of the fifth. Under the facts of this case, we are satisfied that, in order to uphold the validity of this marriage, in the absence of an affirmative showing that there had been no lawful separation, the presumption will be that a divorce had been secured. Marriage should not be destroyed on presumption. The law is astute to preserve the sanctity of the marriage relation, the legitimacy of children, and stability of descent and distribution, and therefore presumes innocence and virtue, in the absence of proof. The wisdom of this presumption is rendered apparent by the facts in this case. This rule is well established by the authorities. *Alabama & Vicksburg Railway Co. v. Beardsley,* 79 Miss. 417, 30 South. 660, 89 Am. St. Rep. 660; *Schmisseur v. Beatrie,* 147 Ill. 210, 35 N. E. 525; *Potter v. Clapp,* 203 Ill. 592, 68 N. E. 81, 96 Am. St. Rep. 322; *Erwin v. English,* 61 Conn. 502, 23 Atl. 753; *Wenning v. Teeple,* 144 Ind. 189, 41 N. E. 600; *Hunter v. Hunter,* 111 Cal. 261, 43 Pac. 756, 31 L. R. A. 411, 52 Am. St.

Rep. 180; *Banks v. State,* 96 Ala. 78, 11 South. 404; *Leach v. Hall,* 95 Iowa, 611, 64 N. W. 790; *In re Rash's Estate,* 21 Mont. 170, 53 Pac. 312, 69 Am. St. Rep. 649.

*Clark v. Barney,* 24 Okla. 455, 103 Pac. 598, in no way conflicts with this conclusion, as in that case it affirmatively appeared that the living wife had not been divorced at the time of the second marriage.

The judgment of the trial court should be reversed and remanded.

By the Court: It is so ordered.