### SCHOOL DIST. NO. 1, MARSHALL COUNTY, et al. v. SCHOOL DIST. NO. 2, MARSHALL COUNTY.

No. 22604.     Nov. 27, 1934.

Utterback & Stinson, for plaintiffs in error.

Don Welch, for defendant in error.

PER CURIAM. This case was tried in the district court on an agreed statement of facts, a supplemental agreed statement of facts, and the testimony of one witness. It involves the boundaries of school district No. 2, referred to as plaintiff, and school districts Nos. 1 and 46, referred to as defendants. Under authority of an Act of Congress known as the Curtis Bill, on February 5, 1902, the United States District Court within and for the Southern District of Indian Territory, Ardmore, Okla., entered a decree of incorporation of the town of Madill. in which decree the boundaries of said town were fixed as follows:

"Including all of section 27, and all of the E. ½ of section 28, in township 5 south, range 5 east, IB&M."

On March 17, 1904, pursuant to further congressional authority, a plat of the town of Madill was prepared by a town-site commission. On April 18, 1904, this plat was approved by the Secretary of the Interior, and constitutes the official boundaries of the town of Madill, as defined by the said town-site commission. All the property in this plat is in section 27 and the east half of section 28, and is specifically described as follows:

"The S. ½ of the N. E. ¼; the S. ½ of the N. ½ of the N. E. ¼; the N. ½ of the N. ½ of the S. E. ¼; the S. ½ of the N. W. ¼ of the S. E. ¼; the S. W. ¼; the S. ½ of the N. W. ¼; the S. ½ of the N. ½ of the N. W. ¼; all in section 27; the S. E. ¼ of the N. E. ¼; the S. E. ¼ of the N. E. ¼ of the N. E. ¼; and the N. E. ¼ of the S. E. ¼; and the N. E. ¼ of the S. E. ¼ of the S. E. ¼ of section 28, township 5 south, range 5 east, and containing in all 560 acres."

This area comprises only 560 acres, 400 acres less than within the boundaries fixed by the United States District Court. This 400 acres is referred to in the record in this case as "the disputed area."

Immediately after statehood the county superintendent of schools of Marshall county, Okla., laid out and organized the school districts of said county. School districts Nos. 1, 32, and 46 were laid out and organized on December 2, 1907. These three districts surround school district No. 2, the Madill district, which was laid out and organized on July 28, 1908. In forming these districts the county superintendent in each instance made a record, as required by law, consisting of two pages. On one page appears the description of the area included in the district, and on the opposite page appears a plat of such district. On the plat in each instance is traced the boundary lines of the district showing the section numbers and fractional section numbers included in each district. This is true except as to district No. 2, in which case a general plat is found opposite the description, on which the boundary lines are not traced out as was done in the other districts.

The official description of district No. 1, as recorded by the superintendent in his book, is as follows:

"Beginning at section and half section line between center of sections 14 and 15, run south to Madill corporation, following Madill around to the southwest corner, thence south to center of section 33, west to center of section 31, now north to center of section 18, then east to starting point. * * *"

On the official plat of district No. 1, made by the superintendent and found in his record, he traces a line from the point of beginning to the northeast corner of section 27, thence west along the north side of sections 27 and 28 to the half section line of section 28, thence south along the west side of the east half of section 28, and down to the center of section 33, thence west to center of section 31, north to center of section 18, and east to starting point.

It will be observed, in passing, that the tracing on this plat follows the north and west lines of the town of Madill as fixed by the United States Court decree.

The official description of district No. 46, as recorded by the superintendent in his book, is as follows:

"Beginning at center of section 18, township 6, range 5, run east to center of section 15, thence north to township line, east one-half mile, thence north to incorporated line of town of Madill follow such line west to extremity, thence run south to center section 33, township 5 south, range 5 east, west to center section 51 and lastly run south to center section 18 or starting point."

On the official plat of district No. 46, made by the superintendent and found in his record, he traces a line from the point of beginning, namely: The center of section 18, township 6, range 5, thence east (E.) to the center of section 15, thence north to the township line, thence east one-half (½) mile, to the southeast (S. E.) corner of section 34, township 5, thence north to the southeast (S. E.) corner of section twenty-seven (27), thence the tracing follows the south (S.) side of sections 27 and 28, to the half section line of section 28, thence runs straight south (S.) to the center of section 33, township 5, thence west (W.) to the center of section 31, thence south (S.) to the starting point.

It will again be observed, in passing, that the tracing on this plat follows the south line of the town of Madill, as fixed by United States Court decree.

The official description of district No. 32, as recorded by the superintendent in his book, is as follows:

"Beginning at center section 24, township 5 south, range 5 east, run north one-half

mile then east four miles, now south on this one-half section line through sections 22, 27 to section line, now west one and one-half miles, next south one-half mile, then west one mile, then south one-half mile, next west on township line to southwest corner section 35, then north two and one-half miles, next east to center section 24, or starting point."

On the official plat of district No. 32, made by the superintendent and found in his record, he traces a line from the beginning point, namely: the center of section 24, township 5 south, range 5 east, thence north (N.) one-half mile, thence east (E.) four (4) miles, thence south (S.) on the one-half section line through sections 22, 27, to the section line, thence west (W.) one and one-half miles, thence south one-half mile, thence west one mile, thence south (S.) one-half mile, thence west (W.) on the township line to the southwest (S. W.) corner of section 35, thence north two and one-half miles, thence east (E.) to the center of section 24, the starting point.

It will be observed that this tracing follows the east (E.) side of section 27, which is the east (E.) boundary of the town of Madill, as fixed by the United States Court decree—and as also fixed by the town-site commission.

Several months after these three districts were formed, district No. 2 was formed. The official description of district No. 2, as recorded by the superintendent in his book, is as follows:

"This district shall embrace and consist of the incorporated town of Madill and no other territory is included by terms of organization. * * *"

The official plat of district No. 2, made by the superintendent and found in his record, embodies no tracings of such district. It is simply a plat showing section numbers.

From 1908 to and including 1914 in the preparation of the tax rolls for Marshall county, all of the real estate within "the disputed area" which was listed for taxation was included in district No. 2. A portion of the acreage within "the disputed area" during such years was not returned for taxation. Taxes paid during these years on the real estate assessed were credited to and received by district No. 2. In 1915 a portion of the real estate in "the disputed area" was listed for taxation in school district No. 1, and a portion in district No. 46, and a portion in district No. 2. In 1916 all of the real estate in the preparation of the tax

rolls of the "disputed area," except a one-fourth acre tract in section 27, which was listed in school district No. 2, was listed on the tax rolls in districts Nos. 1 and 46. From 1917 to 1929, inclusive, all of the real estate in "the disputed area" was listed for taxation on the tax rolls as being in Nos. 1 and 46, and taxes paid and received by said school districts. Same is true for the year 1930, except that the taxes were not due at the time of filing of the stipulation in the trial of the case.

The railway company, named as one of the defendants, had track mileage during all of these years in "the disputed area," and this mileage from 1908 to 1929, inclusive, was listed for taxation in school district No. 2, and the taxes paid and received by such school district.

In the petition filed by district No. 2, as plaintiff, it prays the court to adjudge that "the disputed area" is located within its boundaries, and that the defendant school districts be enjoined from claiming and asserting that said "disputed area" belongs to them or either of them, or that it is located within their respective boundaries, and that the county officers be enjoined from listing any portion of any property located within "the disputed area" as being in such outlying school districts, and the treasurer be enjoined from collecting taxes on the property within said "disputed area" for the defendant school districts, and that the tax rolls and assessment rolls for all property within said "disputed area" be corrected and reformed so as to show that the same is within the plaintiff's school district.

The defendant school districts by answer denied that any part of "the disputed area" was in the plaintiff's district, but alleged that such area was within defendants' districts. They also pleaded estoppel and prayed that the petition of the plaintiff be denied.

The railway company disclaimed any interest in the suit, and the other defendants did not answer. On trial to the court, it found the issues generally in favor of the plaintiff and against the defendants, that school district No. 2 included all of section 27 and all of the east half of 28, and enjoined school districts Nos. 1 and 46 from asserting any authority or control over any portion of such area, and directed the county officers to treat and regard all of "the disputed area" for fiscal financial, scholastic, and municipal purposes, and for purposes of

taxation as being within school district No. 2, and directed the tax rolls for 1930 to be corrected accordingly.

The only question in the case is whether or not the 400 acres of land included within the boundaries of the town of Madill by the United States District Court decree of 1902, but not a part of the plat of said town as prepared under the authority of the town-site commission and approved by the Secretary of the Interior in April, 1904, belongs to and is a part of school district No. 2, the Madill district, or belongs in part to school district No. 1 and in part to school district No. 46.

Two additions to the city of Madill were platted and filed after the plaintiff and defendant school districts were formed, and could have had no consideration by the county superintendent in the forming of such districts. Moreover, these additions were included in the boundaries of Madill, as fixed by the United States Court decree.

The defendants claim that any doubt as to the legal boundaries of Madill has been removed by the decision of this court in September, 1909, in the case of Incorporated Town of Hartshorne v. Incorporated Town of Haileyville, 24 Okla. 775, 104 P. 49. The syllabus of that case is as follows:

"A town having been incorporated by virtue of section 14, Act Cong. June 26, 1898 (Curtis Bill), c. 517, 30 Stat. 499, 500, and by order of court its boundaries having been fixed, when the town-site commission, by virtue of the agreements or treaties between the United States and the Choctaw and Chickasaw Nations, laid out a town site, not covering all the municipal area included by the order of the court fixing such limits, it has the effect of detaching from the original limits such portion of the incorporated area as was not included in the town-site limits."

Defendants insist, therefore, that "the disputed area" is not within the plaintiff's district, as that district under the official description of the superintendent only included, "the incorporated town of Madill and no other territory."

On the other hand, it is urged that when the county superintendent, in 1907 and 1908, divided the county into school districts and made the records hereinbefore referred to, there were two sets of boundaries of the said town of Madill, widely at variance, one set as fixed by the district court decree, and the other as fixed by the town-site commission; that if the superintendent by his of-

ficial description intended to apply the boundaries of the town of Madill as fixed by the court decree, that intention should prevail, notwithstanding it was later determined that the legal boundaries of said town were in fact and in law the ones fixed by the town-site commission.

The statute in force at statehood, under which the county superintendent formed the school districts of Marshall county, so far as applicable hereto, is as follows:

"It shall be the duty of the county superintendent of public instruction to divide the county into a convenient number of school districts and to change such districts when the interests of the people may require it, by making them conform to existing topographical or physical conditions. * * * Such superintendent shall number school districts when they are formed, and he shall keep in a book for that purpose, a description of the boundaries of each school district and part of district in his county with a plat of same, date of organization, date and full record of all changes of boundaries and a list of district officers in his county, the date of election or appointment and the time the term of each is to expire." (Oklahoma Statutes 1931, sec. 6771; Snyder's Compiled Laws of Oklahoma, 1909, ch. 102, art. 3, sec. 7975.)

This statute clearly contemplates that all the territory in the county should be divided into school districts. Manifestly, it was not the intention of the school superintendent to leave the 400 acres of land known in this case as "the disputed area" unattached to some one or more of the surrounding districts. The law specifically required the superintendent to keep an official record book for purposes named in the statute. In it he was to keep "descriptions of the boundaries of each school district in his county with a plat of the same." Such a book he did keep. "Descriptions of the boundaries and a plat of the same" are found therein. From that record we bring together on the following plat a composite picture of the three "descriptions" of school districts Nos. 1, 32, and 46, surrounding district No. 2, ignoring the official plats and using the town-site commission plat of 1904 as the legal boundaries of the town of Madill.

Following the calls in the official description, and applying them as they are applied in the foregoing plat, discloses that there are diagonal lines, where the call is for straight lines—and broken lines, where the call is for straight lines—and ambiguity instead of clearness. For instance, what point is the

west extremity of the town of Madill? And having solved that problem, such point under no circumstances can be due north of the center of section 33, to which center the call in both defendant school districts leads. In following the call of the description of defendant district No. 46 "north to incorporated line of town of Madill follow such line west to extremity, thence run south to center section 33," we find that we have to pass north from the southeast corner of section 27 to the incorporated limits of the town as fixed by the town-site commission, from which point the call is hopelessly ambiguous, for the call says to go west to extremity. This cannot be followed, and we are forced to go west only one quarter of a mile, in following the town-site commission boundaries, thence south one-eighth of a mile, thence west one-quarter of a mile, thence south one-quarter of a mile, thence west one-half mile, and then we reach one of the three points which may be called the "west extremity" of said town. If we adopt that point as the extremity, then we have a diagonal line southwest to the center of section 33, where the call says "thence run south to center section 33." If that point is not adopted as the extremity, then we go north one-eighth of a mile, west one-eighth of a mile, to another possible "west extremity," and from there we go in a diagonal line southwest to the center of section 33, instead of a due south line to the center of section 33. Again, if we do not stop at this second point as the "west extremity"

of said town, we then go north one-eighth of a mile, west another one-eighth of a mile, and find a third possible "west extremity," and from that point we cannot go south, but must go southwest to the center of section 33.

The same analysis of the calls in the official description of district No. 1 leads likewise to the same ambiguities.

The defendants urge that the trial court committed error in permitting extrinsic evidence to be offered in regard to the boundaries of the town of Madill, as that expression is used in the calls in the official descriptions of the interested school districts. In view of the ambiguities which are apparent in these calls, we hold that the trial court committed no error in hearing extrinsic evidence as to the intention of the county superintendent.

In the case of Cook et ux. v. Hensler et ux., 57 Wash. 392, 107 P. 178, in the body of the opinion of the Supreme Court of Washington, the following language is used:

"* * * On the other proposition, it may be said that, while ambiguities in the description will alone justify a recourse to evidence extraneous to the deed, yet the ambiguity is not necessarily confined to the description of metes and bounds or monuments or what is generally understood as descriptions. But it may consist, as we think it does in this case, in a doubt as to what plat is referred to, a determination of which question is absolutely necessary to a correct interpretation of the deed and an ascertainment of the intention of the parties."

And then again:

"* * * Finding, then, that there is an ambiguity and doubt as to which plat was referred to, we will look at the circumstances of the case and the testimony adduced, not for the purpose of disputing the deed, but for the sole purpose of explaining it and of arriving at the real intent of the parties."

The extrinsic evidence which the trial court accepted or permitted to be offered discloses the fact that the town of Madill was first incorporated under authority of Congress by the United States District Court in a decree rendered in 1902; that such decree included in the boundaries of said town all of section 27, and the east half of section 28. Such evidence also discloses that at the time the county superintendent formed the three outlying school districts in 1907, and the Madill district in 1908, the Town of Hartshorne v. Town of Haileyville decision by this court had not been rendered, and, therefore, it had not been finally determined that the town-site commission boundaries of the town of Madill were in fact and in law the legal boundaries of said town. Having admitted this evidence showing that the county superintendent in his official calls might have had in mind the boundaries as fixed by the court decree, we then produce the following plat which brings together, not only the calls in the official descriptions as found in the superintendent's record, but also the official plats which he, under the law, was required to keep in such record.

| 13 | 18 | 17 | 16 | 15 | 14 | 13 | 18 | 17 | 16 | 15 | 14 |
| 24 | 19 | 20 | 21 | 22 | 23 | 24 | 19 | 20 | 21 | 22 | 23 |
| 25 | 30 | 29 | 28 | 27 | 26 | 25 | 30 | 29 | 28 | 27 | 26 |
| 36 | 31 | 32 | 33 | 34 | 35 | 36 | 31 | 32 | 33 | 34 | 35 |
| 1 | 6 | 5 | 4 | 3 | 2 | 1 | 6 | 5 | 4 | 3 | 2 |
| 12 | 7 | 8 | 9 | 10 | 11 | 12 | 7 | 8 | 9 | 10 | 11 |
| 13 | 18 | 17 | 16 | 15 | 14 | 13 | 18 | 17 | 16 | 15 | 14 |

Examination of this composite plat now reveals a logical, regular scheme of division of all of the territory into school districts. Straight lines from established points to established points are followed—no difficulty is had in understanding the calls in the descriptions—and all doubt is removed from our case. The official plats conclusively show that the superintendent intended districts Nos. 1, 32, and 46 to completely surround the town of Madill, as its boundaries were fixed by the court decree. These three districts were organized in 1907; in 1908, the superintendent organized district No. 2, and contented himself by describing it as "embracing and consisting of the incorporated town of Madill and no other territory." Manifestly, he intended that description to include all of the territory of "the disputed area."

In the case of City of Cleveland v. Bigelow, 98 Fed. 242, the court holds that a plat, where the same is required by law to be recorded, controls over the minutes of a survey in the event of an inconsistency. Its language is as follows:

"A plat of a city, as originally laid out, which was recorded and by reference to which conveyances were made, showed that a particular lot at the intersection of two streets was not rectangular, but that the exterior corner had been taken off, and added to the width of one of the streets. The minutes of the original survey contained a statement of the width of the street, without showing that it was not of uniform width throughout, as in fact it was, as shown on the plat, except at this particular corner, where it terminated. Held, that the plat and minutes were not inconsistent, but that, even if contradictory, the plat would control as to the boundary of the lot, where it was the settled policy of the state, as shown by its statutes, to require the recording of plats of cities and towns."

In the case of Wolfe v. Scarborough, 2 Ohio St. 361, the following language is found:

"We think it manifest that Hogg intended that the 13 lots should embrace all his land. And this intention is quite sufficient to control the estimate of quantity, and the memorandum that the lots are 200 perches square. The object of construction is to ascertain the intent of the parties, and, when this intent is discovered, it governs, unless the language employed renders it impossible to give it effect. There is no such difficulty in this case. The authorities are clearly on the side of the defendants. They show that, in a case like this, the map or plat is more to be relied on than a call for distance and quantity. McIver's Lessee v. Walker, 9 Cranch, 173, 3 L. Ed. 694; Id., 4 Wheat. 444, 4 L. Ed. 611; Lunt v. Holland, 14 Mass. 149; Davis v. Rainsford, 17 Mass. 207; Magoun v. Lapham, 21 Pick. 135."

In the present case we are of the opinion that the plat controls, and settles the rights of the parties.

The conclusion reached by the trial court permits complete harmony to exist in the official acts of the county superintendent, makes the legal descriptions placed by him on his official record of the boundaries of the four school districts exactly coincide with the plats of the districts prepared by him, and is abundantly supported by the evidence and the record in this case.

There is no estoppel in this case. Not only the county superintendent, but the county treasurer, the county assessor, the county clerk, and the owners of real estate and personal property in this so-called "disputed area", for years after the town-site commission plat had been filed, still regarded the boundaries of the town of Madill, in so far as school district questions were concerned, as those fixed by the decree of the district court in 1902. In fact, up until 1930, the record discloses that the personal property owned by the defendant railway company and comprising the principal taxable asset of said district had been uniformly placed by the taxing authorities, and acquiesced in by the school district authorities, to the credit of school district No. 2.

The testimony of the witness Lynn shows that in 1915 there was some agitation started in regard to the annexation of a portion of district No. 1 to district No. 2. The evidence is not clear as to just how far this agitation progressed.

For years after the agitation, the plaintiff district collected taxes on the personal property in "the disputed area." Under these circumstances there could be no estoppel.

The judgment and the decree of the trial court is affirmed.

The Supreme Court acknowledges the aid of Attorneys W. H. Wilcox, John Adams, and J. M. Springer in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of the law and facts was prepared by Mr. Wilcox and approved by Mr. Adams and Mr. Springer, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.